EXHIBIT 1-4

## PHOTOGRAPHER'S AGENCY AGREEMENT FOR THE LICENSING OF
## STOCK PHOTOGRAPHS ("Agreement")

This Agreement is between Heidi & Hans Jurgen Koch, hereinafter referred to as "Photographer" and Minden Pictures, Inc., hereinafter referred to as "Agency".

### 1. DEFINITIONS:

1.1 "Image" or "Images", means all photographic matter including but not limited to original transparencies, photographs, duplicates, negatives, prints, positives or compilations of any of the foregoing items, including without limitation, any form of data or digitized or recorded information derived of any of the foregoing which are previously, now and hereinafter submitted to and accepted by the Agency pursuant to the terms and conditions of this Agreement.

1.2 "License" or "Licensing" means the marketing, grant, lease, sale, use or other exploitation of reproduction rights to an Image or any derivative rights thereof.

1.3 An image is "Essentially Similar" to another Image if they may reasonably cause a person viewing each of them to believe that they are the same or substantially the same Images.

1.4 "MP&A" means Minden Pictures, Inc. and its subsidiaries, affiliates, parent companies and authorized agents and sub-agents.

1.5 "Duplicate" or "Duplicates" mean duplicates, facsimiles, digital scans, or other reproductions of Images, whether created by the Photographer or MP&A.

1.6 "Promotion" or "Promotions" means the display, broadcast, publication, reproduction or use of Images in catalogs, brochures, CD Roms, DVDs or on-line Licensing and/or web sites, in any and all mediums, now known or later developed, throughout the world, for purposes of advertisement, promotion, solicitation or Licensing of Images.

1.7 "Promotion Period" means the 5 year period beginning with the date of publication/creation of a Promotion or from the date of inclusion of Image(s) in an on-line site for purposes of advertisement, promotion, solicitation or Licensing of Images.

1.8 "Territory" means world wide without exception. NA Territory means North America.

1.9 "New Media" means electronic products or programming including but not limited to interactive learning modules, interactive television programming, interactive or streaming media, digital slide shows, on-line content, web broadcasting, CD-ROMs and DVDs or other electronic media now in existence or hereafter invented.

### 2. AUTHORIZATION:

2.1 Photographer, appoints MP&A as sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images in the Territory. Photographer agrees not to place Images, with any agent, agency, or selling medium except Agency. Photographer and/or his representatives shall not issue any Licenses to any Images except as provided under this Agreement. Photographer grants further that Agency shall be Photographer's sole and exclusive agent in the NA Territory. Photographer agrees further that none of Photographer's images may be licensed into the NA Territory by another agency either from within of from outside of the NA Territory.

    2.1.1 Notwithstanding the foregoing, Photographer and Agency agree that any Images submitted to Agency as a feature story shall be represented under terms different from those described elsewhere in this agreement. Specifically, Agency will be the

exclusive representative for feature stories in North America only , Agency will not be entitled to license feature stories outside of North America without Photographers' permission; and Agency shall only be entitled to represent feature stories for as long a duration as allowed by Photographer.

2.2  Photographer grants MP&A the right with respect to Images to create derivative New Media products and programming.

2.3  Photographer grants Agency the right to appoint and contract with sub-agents regarding Licensing of Images in the Territory. Agency shall also have the unrestricted, exclusive right to distribute, License and/ or exploit the Images in the Territory through MP&A without seeking special permission to do so from Photographer except as otherwise provided in this Agreement. Photographer agrees that all Images are available for unrestricted, exclusive, distribution, promotion and Licensing in the Territory by MP&A except as otherwise provided in this Agreement.

2.4  All negotiations concerning Licensing of Images by MP&A shall be at MP&A's sole discretion without prior consultation with the Photographer, except as provided under this Agreement.

2.5  Notwithstanding the foregoing, Photographer and MP&A agree that:

2.5.1  All Image Licensing by MP&A which involve the grant of rights as follows shall require prior written permission by Photographer:

2.5.1.1  the grant of rights in perpetuity
2.5.1.2  the grant of total exclusive rights
2.5.1.3  the purchase or buyout of all rights

2.5.2  Photographer may use Images for personal promotion and personal book projects provided any such use does not conflict with Licenses granted by MP&A.

2.5.3  MP&A  Licensing of Images in books of which greater than 50% of the total are by Photographer requires prior written permission by Photographer.

2.6  In the event either Photographer or MP&A grants a license that is contrary to the terms of this Agreement (an "Unauthorized License"), the party that grants such Unauthorized License shall pay to the other party an amount (the "Unauthorized License Fee") equal to the gross amount received in respect of such Unauthorized License. As between the parties hereto, the liability (for money damages) of the party that grants an Unauthorized License shall be limited to an amount equal to the Unauthorized License Fee. Notwithstanding the foregoing, the party that grants an Unauthorized License shall indemnify, defend, and hold harmless the other party in respect of any damages, costs, and expenses (reasonable attorneys fees included) incurred by the other party arising from or relating to the Unauthorized License.

2.7  Nothing herein shall prevent Photographer from engaging in assignment work for his own accounts nor from Licensing - either directly or indirectly - images which are not identical  to Images.

3.  WARRANTIES:

3.1  Agency and Photographer each represents and warrants the following:

3.1.1  Each party has the right and authority to enter into this Agreement and to perform all obligations hereunder.

3.1.2  This Agreement is not in conflict with any other agency agreement signed by Agency or Photographer, as applicable.

3.2 In addition to the representation and warranty under paragraph 3.1, Photographer represents and warrants to Agency the following:

3.2.1 Photographer alone holds the copyright to Images and has not assigned such copyright to any third party.

3.2.2 Photographer is the sole and exclusive owner of the Images and has full and unrestricted right to License the Images except for any restrictions disclosed to Agency pursuant to 3.2.4 below.

3.2.3 To the best of Photographer's knowledge, Images do not infringe any copyrights, trademarks, property rights, right of privacy, or publicity and do not defame or violate the rights of any third parties in any manner.

3.2.4 Unless any previous Licenses, sales restrictions, or limitations for the use of Images are indicated in writing to Agency, no Licensing restrictions exist and to the best of Photographer's knowledge, there are no claims by any person or entity of such Licensing, restrictions or limitations.

3.3 In the event of any breaches of the above representations and warranties, the party in breach agrees to indemnify and hold the other party harmless for any and all losses, liabilities, damages, claims, demands, costs obligation, deficiencies and expenses (including interest, penalties, and reasonable attorney's fees) which arise, result from or relate to any breach of the above representations and warranties except as provided otherwise in this Agreement.

4. AGENCY OBLIGATION:

4.1 Agency shall use its best commercial efforts to License Images through MP&A and to maximize the consideration for the Licensing.

4.2 Agency shall conduct its business in a professional and ethical manner so as to maintain and promote the reputation of Photographer and his Images.

4.3 Agency shall use a reasonable commercial effort to provide Photographer with samples of all Images Licensed through MP&A. Agency and Photographer understand and agree there are difficulties in obtaining samples when Agency does not handle Licensing directly.

5. PHOTOGRAPHER'S OBLIGATION:

5.1 Photographer agrees to supply Agency with properly mounted and captioned Images and to provide copies of Model Releases or Property Releases on all appropriate Images when available. In the event the existence of a model or property release is not indicated for a given Image, Agency acknowledges that no such release shall be deemed to exist and Agency assumes full responsibility for the subsequent use of such Images and indemnifies the Photographer from any and all damages incurred by MP&A or third parties in connection with such uses.

5.2 Photographer agrees to immediately advise Agency in writing of the terms of any Licensing restrictions applying to any Image in order that MP&A and Photographer may avoid the grant of conflicting Licenses.5.3 - N/A

5.4 Photographer agrees to provide Agency a list of all other agents, agencies or selling mediums with which Photographer has in the past or at present made arrangements to License images.

5.5 It is agreed that the mailing address Photographer furnishes to Agency is of primary importance. Photographer therefore agrees to furnish Agency with a current address to which all payments, sales reports, Images and other materials may be sent.

6. COPYRIGHT:

6.1 All Images Licensed by MP&A shall contain a copyright notice in Photographer's name as such notice has been indicated by Photographer on the face of the Images. In the event no notice is so affixed, Agency agrees to affix notice in Photographer's name before the Licensing of any Image.

6.2 All Images shall at all times remain the sole and exclusive property of the Photographer, including the copyright, which shall be held by MP&A solely for Licensing purposes described herein. Photographer grants Agency the right to register such Images for copyright protection in Photographer's name and for the benefit of Photographer.

## 7. COMMISSION:

7.1 Photographer's commission on Licensing of Images by MP&A shall be fifty percent (50%) of the gross billings except with respect to packages, for which the commission shall be sixty percent (60%) of the gross billings. For the purposes of this Agreement, a package shall be defined as a series of Images by Photographer which is marketed and sold to a magazine or other periodical as a set that shares a common theme or story line, provided that a set of Images shall not be considered a package unless more than 5 Images are published in a single issue. Gross billings shall be defined as all revenue collected by Agency from the Licensing of Images. Permissible deductions from gross billings shall include currency conversion costs, bank fees, collection fees and sales, use or foreign taxes. Gross billings shall not include service fees, holding fees and research fees.

7.2 With respect to revenues received from the Licensing of New Media products and programming developed by MP&A, twenty-five percent (25%) of such revenues shall be deemed to represent royalties for image content incorporated therein, of which one half (12.5%) shall be paid to Photographer. Photographer's share of New Media royalties shall be determined either by the pro rata portion of a New Media product devoted to Photographer's Images or the pro rata use of a New Media product attributable to Photographer's Images.

7.3 Agency agrees to a monthly payment schedule for reproduction fees collected for the use of Images. Commission checks shall be accompanied by a sales report that includes the following information: date of payment; description of usage; subject of image; identification number of image; gross amount received by Agency; deductions, if any, and amount paid to Photographer. Commission reports and payment for all licensing revenue collected in a given month shall be due and payable on the 20th day of the following month. Notwithstanding the foregoing, it is stated herein that partial payments or any payments received with insufficient information to allow the accurate allocation of revenues between photographic sources shall not be deemed "collected" by Agency until any such payment is made in full or until receipt of information allowing Agency to make an accurate allocation of commissions to photographers.

7.4 After the termination of this Agreement, or, in the case of Images included in MP&A Promotions, after the termination of the Promotion Period, MP&A shall, for a period of one year, have the right to issue Licenses to Images which are in the possession of MP&A customers at the time of termination and which are under consideration for possible use. MP&A shall receive its regular commission, as defined herein, for all Licensing completed under this provision.

7.5 After the termination of this Agreement, or, in the case of Images incorporated in Promotions, after the termination of the Promotion Period, MP&A shall have the right, for five years to relicense, extend, renew, and/or modify any and all Licenses to any Images Licensed during the term of this Agreement, subject only to Photographer's confirmation that no conflict will arise with another license as a consequence. MP&A shall receive its regular commission, as defined herein, on any and all revenues from the relicense, renewal, extension and/or modification of Licenses to Images Licensed during the term of this Agreement.

## 8.    DUPLICATES:

8.1 Photographer agrees that MP&A may make Duplicates as required to distribute Images.

8.2  Photographer agrees that Duplicates may differ somewhat from Images in such attributes as color, density, sharpness, or crop and that Agency shall bear no liability for any such differences.

8.3  MP&A shall have the unrestricted right and sole discretion to make Duplicates of any Images. Photographer shall not be charged for the cost of making any Duplicate transparencies except as otherwise provided under this Agreement. Copyright ownership to any such Duplicates shall remain with the Photographer but the ownership of the Duplicates themselves shall remain with Agency. MP&A will not make any use of the Duplicates contrary to the terms of this Agreement and if Photographer so requests, MP&A will destroy the Duplicates after it has no further right to exploit them pursuant to this Agreement. Upon termination of this Agreement, Photographer may purchase Duplicates at Agency's cost which shall be stipulated as follows: a) 35mm duplicates: $1.00 b) 70mm duplicates: $3.00 c) 4x5 duplicates: $20.00 and 8x10 duplicates: $50.00.

## 9.    AGENCY USE OF IMAGES FOR PROMOTION:

9.1  Subject to the terms and conditions of this Agreement, MP&A shall have the right and sole discretion to reproduce and use any Images for Promotions in any and all media without compensation to Photographer. After the termination of this Agreement, MP&A shall continue to have the right to use existing promotional material without charge for an additional period of one year from the date of termination

9.2  Agency may select Images for MP&A catalog, website and CD/DVD Promotions and may retrieve from Photographer up to fifty percent (50%) of the pro rata costs of such Promotions. For the purposes of this Agreement, costs of Promotions shall include but not be limited to all relevant costs and expenses of design, prepress, duping, Image scanning, digital cleanup, programming, color separation, production consulting, printing, paper, binding, packaging, transport, distribution and advertising.  Agency and Photographer agree that Photographer's per Image cost sharing for Images included in MP&A websites shall be a one time fixed charge amounting to $10.00 per Image.  Agency shall advance all costs incurred in such Promotions, and Photographer's fifty percent (50%) share of these costs will be deducted from sales commissions. Such deductions may not exceed 25% of sales commissions due Photographer in any monthly period. It is herein agreed between Photographer and Agency that Photographer promotional cost sharing shall not include print promotions unless or until agreed to separately between the parties.

9.3  Photographer agrees that MP&A may continue to License all Images used in MP&A Promotions during the Promotion Period in accordance with the rights granted to MP&A under this Agreement, regardless of the date of termination of this Agreement.

## 10. INSPECTION OF AGENCY BOOKS:

Agency agrees that upon reasonable notice and during regular business hours, Photographer shall have the right once a year to inspect Agency books and records at the offices of Agency to make extracts thereof as same relate to revenues and expenses related to Photographer's Images ( an "Audit").  Given Agency's responsibility to keep individual photographer records confidential, any such Audit may only be conducted by a licensed, third party CPA and any findings to be communicated to Photographer shall first be submitted to Agency for review.  If the result is the discovery that Agency has underpaid Photographer by an amount equal to or in excess of ten percent (10%) of Photographer's gross annual revenue from Agency in the prior calendar year, then Agency shall bear all costs and expenses of such an audit as well as remit to the Photographer all past due sums.

## 11. STORAGE, CUSTODY, RETRIEVAL AND RETURN OF IMAGES:

11.1  Photographer agrees that Images shall remain with Agency for the duration of this Agreement and that if subsequently recalled, one year from the date of the return request shall be deemed a reasonable time for their reassembly and return.  Notwithstanding the foregoing, Agency shall make a reasonable effort to return to Photographer all Images which are not in circulation to clients or sub-agents within 120 days of contract termination. With respect to Images in Promotions for which the Promotion Period continues past termination of this Agreement, Agency shall make a reasonable effort to reassemble and destroy or return to

Photographer all Images within 120 days, but no later than one year, following termination of the Promotion Period.

11.2 Photographer understands and agrees that Agency may at its discretion decide to return certain Images to Photographer. Agency is authorized to make such returns at its expense to Photographer via personal delivery, UPS or certified mail.

## 12. CLAIMS, RECOVERIES AND LIABILITY:

12.1 Photographer agrees to indemnify, defend, and hold MP&A harmless from any claims, lawsuits, attorney's fees or other expenses resulting from any erroneous, inaccurate or incomplete information he supplies regarding ownership, caption information, or Licensing restrictions for Images.

12.2 Photographer understands that Images may be lost, damaged, faded or discolored through normal use. Accordingly, Photographer agrees that if at the time of termination of this Agreement, a reasonably full return of Images cannot be made because of the foregoing, then Agency shall have no liability therefore. Agency's liability with regard to the return of Photographer's Images shall be limited to $100 even in the event of negligence.

## 13. INSURANCE:

Photographer agrees that image library collections are not insurable and that he should therefore seek insurance of his own should he wish to have Images afforded better protection than that offered by Agency.

## 14. INSTITUTION OF ACTIONS:

In the event of non-payment, loss, damage, destruction or unauthorized use of Images by Agency's clients, subagents or other, Photographer gives Agency full and complete authority to make or institute suit in Photographer's name, if necessary, without Photographer's permission. All resulting recovery shall be apportioned fifty percent (50%) to Photographer and fifty percent (50%) to Agency after deduction for collection fees, legal fees, subagent commissions and other expenses incurred by Agency in its efforts to resolve said claim. Photographer agrees to give reasonable cooperation with respect to such lawsuits, including without limitation, production of pertinent documents, responding to interrogatories, and appearances at deposition and trial provided Photographer's expenses are reimbursed by Agency. Photographer agrees that whereas the foregoing grants Agency the complete authority to institute suit, Agency is not obligated to do so.

## 15. TERM AND TERMINATION:

15.1 This Agreement shall be in effect for five (5) years from the commencement date hereof, and shall be automatically renewed for a like period unless either party notifies the other party in writing of its intention not to renew this Agreement no later than thirty (30) days before the date of renewal. The commencement date of this Agreement shall be the date signed by Agency and Photographer and if signed on different dates, the later of the two dates shall be the commencement date.

15.2 Upon expiration or termination of this Agreement, MP&A shall immediately cease all activities in respect to Licensing of any Image except as otherwise provided in this Agreement.

## 16. EVENT OF BANKRUPTCY:

All Images shall remain Photographer's property and cannot be construed as assets of MP&A in the event of bankruptcy.

## 17. ARBITRATION:

Agency and Photographer agree that any and all claims and disputes arising under this Agreement shall be resolved by binding arbitration under the auspices of the American Arbitration Association in San Francisco, California. Any award may be confirmed in any court having jurisdiction.

18. MISCELLANEOUS:

18.1 Except as otherwise provided herein, this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, personal representatives, successors and assigns of the parties hereto.

18.2 In the event either party is required to retain an attorney to enforce the terms of this Agreement, the prevailing party's attorney fees shall be paid by the other party.

18.3 Should any provision of this Agreement be found to be non-binding, all remaining provisions shall remain in force for the duration of this Agreement.

18.4 This Agreement may not be terminated during its term except for material breach of its provisions.

18.5 It is agreed that this Agreement does not constitute an employment agreement between Agency and Photographer and that the status of both parties is solely that of independent contractor.

18.6 No trade, custom, or usage shall affect this Agreement or the terms and conditions of it.

18.7 Any notice to be given hereunder shall be in writing and either delivered personally or sent by registered mail, return receipt requested, or by any courier requiring acknowledgement of receipt to the respective addresses set forth for Agency and Photographer herein. Either party may change said address by giving notice to that effect pursuant to the terms of this paragraph.

18.8 This Agreement is to be interpreted solely according to the laws of the State of California.

18.9 This Agreement represents the entire agreement between Agency and Photographer, and supersedes all prior negotiations, representations, or agreements, whether written or oral. This Agreement may be amended only by written agreement signed by both parties.

18.10 Photographer understands and accepts that Agency's terms and conditions pertaining to Image submissions and use as outlined on Agency's delivery memos, invoices and other such paper work, apply only to the terms of business between Agency and it's clients and not between Agency and Photographer.

18.11 The terms of this Agreement shall remain confidential between Agency and Photographer.

Agreed to and Accepted:

Richard L. Minden, President
President, Minden Pictures, Inc.
558 Main Street
Watsonville, CA 95076

Date: July 25 2003

Heidi & Hans Jurgen, Koch
address: Jcheffedito 48
D-74 102 Freiberg
bermaer

Date: Sept. 04, 2003

This First Amendment ("First Amendment") to the PHOTOGRAPHER'S AGENCY
AGREEMENT FOR THE LICENSING OF STOCK PHOTOGRAPHS dated as of Sept. 01,
2003, ("Agreement") dated as of August 8, 2006, by and between Heidi & Hans-Jurgen Koch
("Photographer"), and Minden Pictures, Inc. ("MP").

The parties wish to modify the Agreement as set forth in detail in this First Amendment.
In consideration of the promises, representations and mutual covenants described below, the
parties agree as follows:

This First Amendment shall modify the specific provisions set forth below. Except as
amended herein, the Agreement shall remain in full force and effect according to its terms. In
case of a conflict between a provision of this First Amendment and a provision of the Agreement,
the provision of this First Amendment shall control.

1.    Territory:

Paragraph 1.8 defining the territory in which MP is authorized to license Photographer's
Images shall be amended to "World Wide without exception". NA Territory means North
America.

2.    Limitations to Image Licensing by MP:

Paragraphs 2.4 & 2.5 limiting MP Image Licensing shall be amended as follows:

2.4  All Licensing of Images by MP&A shall be at MP&A's sole discretion without prior
consultation with the Photographer, except as provided in Paragraph 2.5

2.5  Only Image Licensing by MP&A involving the grant of rights as follows shall
require prior written permission by Photographer:

    2.5.1        the grant of total exclusive rights
    2.5.2        the purchase or buyout of all rights

3.    Term:

Paragraph 15 shall be amended such that the Agreement shall continue in force, without
interruption, from the date originally signed until the later of: the date of termination stipulated in
the original Agreement or three (3) years after the date of this First Amendment.

IN WITNESS WHEREOF, the parties have executed this First Amendment as of
the day and year first set forth above.

Photographer:

By: Heidi & Hans-Jurgen Koch

Dated: Sept. 1, 2006

MINDEN PICTURES, INC.

By: Richard L. Minden, President

Dated: Sept 6, 2006

This Second Amendment ("Second Amendment") dated as of August 8, 2009 to the PHOTOGRAPHER'S AGENCY AGREEMENT FOR THE LICENSING OF STOCK PHOTOGRAPHS dated as of Sept. 01, 2003, ("Agreement"), by and between Heidi & Hans-Jurgen Koch ("Photographer"), and Minden Pictures, Inc. ("MP")

    The parties wish to modify the Agreement as set forth in detail in this Second Amendment. In consideration of the promises, representations and mutual covenants described below, the parties agree as follows:

    This Second Amendment shall modify the specific provisions set forth below. Except as amended herein, the Agreement shall remain in full force and effect according to its terms. In case of a conflict between a provision of this Second Amendment and a provision of the Agreement, or a provision of the First Amendment, the provision of this Second Amendment shall control.

    Authorization.        Paragraph 2.1 shall be amended to read as follows:
Photographer, appoints MP&A as sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images in the Territory. Photographer agrees not to place Images, with any agent, agency, or selling medium except Agency. Photographer and/or his representatives shall not issue any Licenses to any Images except as provided under this Agreement.

    Paragraph 2.1.1 shall be amended to read as follows:
Notwithstanding the foregoing, Photographer and Agency agree that for any Images submitted to Agency for consideration for licensing as a feature story, Agency may either accept or reject the submission. If Agency is not interested in licensing the feature story, Photographer may offer the material to another Agency for Licensing. If Agency accepts the feature story for Licensing, Photographer may rescind representation if after 6 months Agency has not sold the feature story. In such case, Agency shall no longer represent Images in the feature story and Photographer is free to offer the images for Licensing through another Agency

Feature stories shall be represented under terms different from those described elsewhere in this agreement. Specifically, Agency will be the exclusive representative for feature stories in North America only, Agency will not be entitled to license feature stories outside of North America without Photographers' permission; and Agency shall only be entitled to represent feature stories for as long a duration as allowed by Photographer.

    Term:    Paragraph 15 shall be amended such that the Agreement shall continue in force, without interruption, from the date originally signed until three (3) years after the date of this Second Amendment.

    IN WITNESS WHEREOF, the parties have executed this Second Amendment as of the day and year first set forth above.

Photographer:                                                          MINDEN PICTURES, INC.

By: Heidi & Hans-Jurgen Koch                          By: Richard L. Minden, President

Oct. 4, 2009                                                        Oct 14 2009
Dated:                                                                     Dated:

Minden v. Pearson                                                                          006657

Copyright Assignment, Accrued Causes of Action, and Litigation Agreement

The undersigned, the sole owner of the copyrights in the undersigned's images ("the Images") selected by Minden Pictures, Inc. ("Agency") and included in its collection, hereby assigns to Agency co-ownership of all copyrights in the Images. This assignment authorizes Agency, in its sole discretion, to present, litigate and settle any accrued or later accruing claims, causes of action, choses in action – which is the personal right to bring a case – or lawsuits, brought by Agency to address unauthorized uses of the Images by licensees of Agency, as if Agency were the undersigned. Agency agrees to reassign its co-ownership of the Images back to the undersigned immediately upon the conclusion of any such litigation.

Any proceeds obtained by settlement or judgment for said claims shall, after deducting all costs, expenses and attorney's fees, be divided as provided in the Photographer's Agency Agreement.

The Undersigned:

Signature
HEIDI KOCH
HANS-JÜRGEN KOCH
Print Name

Date signed: March 28, 2010

Minden Pictures, Inc.:

Richard L. Minden, President

Date signed: april 5, 2010

PHOTOGRAPHER'S AGENCY AGREEMENT FOR THE LICENSING OF
STOCK PHOTOGRAPHS ("Agreement")

This Agreement is between Hiroya Minakuchi, hereinafter referred to as "Photographer" and Minden Pictures, Inc., hereinafter referred to as "Agency".

1. DEFINITIONS:

1.1 "Image" or "Images", means all photographic matter including but not limited to original transparencies, photographs, duplicates, negatives, prints, positives or compilations of any of the foregoing items, including without limitation, any form of data or digitized or recorded information derived of any of the foregoing which are previously, now and hereinafter submitted to and accepted by the Agency pursuant to the terms and conditions of this Agreement.

1.2 "License" or "Licensing" means the marketing, grant, lease, sale, use or other exploitation of reproduction rights to an Image or any derivative rights thereof.

1.3 An image is "Essentially Similar" to another Image if they may reasonably cause a person viewing each of them to believe that they are the same or substantially the same Images.

1.4 "MP&A" means Minden Pictures, Inc. and its subsidiaries, affiliates, parent companies and authorized agents and sub-agents.

1.5 "Duplicate" or "Duplicates" mean duplicates, facsimiles, digital scans, or other reproductions of Images, whether created by the Photographer or MP&A.

1.6 "Promotion" or "Promotions" means the display, broadcast, publication, reproduction or use of Images in catalogs, brochures, CD Roms, DVDs or on-line Licensing and/or web sites, in any and all mediums, now known or later developed, throughout the world, for purposes of advertisement, promotion, solicitation or Licensing of Images.

1.7 "Promotion Period" means the 5 year period beginning with the date of publication/creation of a Promotion or from the date of inclusion of Image(s) in an on-line site for purposes of advertisement, promotion, solicitation or Licensing of Images.

1.8 "Territory" means world wide except Japan.

1.9 "New Media" means electronic products or programming including but not limited to interactive learning modules, interactive television programming, interactive or streaming media, digital slide shows, on-line content, web broadcasting, CD-ROMs and DVDs or other electronic media now in existence or hereafter invented.

2. AUTHORIZATION:

2.1 Photographer, appoints MP&A as sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images in the Territory. Photographer agrees not to place Images, or those which are Essentially Similar, with any agent, agency, or selling medium except Agency. Photographer and/or his representatives shall not issue any Licenses to any Images, nor those which are Essentially Similar, except as provided under this Agreement.

2.2 Photographer grants MP&A the right with respect to Images to create derivative New Media products and programming.

2.3 Photographer grants Agency the right to appoint and contract with sub-agents regarding Licensing of Images in the Territory. Agency shall also have the unrestricted, exclusive right to distribute, License and/ or exploit the Images in the Territory through MP&A without seeking special permission to do so from Photographer except as otherwise provided in this Agreement. Photographer agrees that all Images are available for unrestricted, exclusive, distribution, promotion and Licensing in the Territory by MP&A except as otherwise provided in this Agreement. Photographer will insure that no other parties will License reproduction rights to any images which are identical to or Essentially Similar to any Images.

2.4 All negotiations concerning Licensing of Images by MP&A shall be at MP&A's sole discretion without prior consultation with the Photographer, except as provided under this Agreement.

2.5 Notwithstanding the foregoing, Photographer and MP&A agree that:

2.5.1 All Image Licensing by MP&A which involve the grant of rights as follows shall require prior written permission by Photographer:

2.5.1.1 the grant of rights in perpetuity
2.5.1.2 the grant of total exclusive rights
2.5.1.3 the purchase or buyout of all rights

2.5.2 Photographer may use Images for personal promotion and personal book projects provided any such use does not conflict with Licenses granted by MP&A. Photographer and/or his agent may license Images in Japan without advising or seeking permission from Agency.

2.5.3 MP&A Licensing of Images in books of which greater than 50% of the total are by Photographer requires prior written permission by Photographer.

2.6 In the event either Photographer or MP&A grants a license that is contrary to the terms of this Agreement (an "Unauthorized License"), the party that grants such Unauthorized License shall pay to the other party an amount (the "Unauthorized License Fee") equal to the gross amount received in respect of such Unauthorized License. As between the parties hereto, the liability (for money damages) of the party that grants an Unauthorized License shall be limited to an amount equal to the Unauthorized License Fee. Notwithstanding the foregoing, the party that grants an Unauthorized License shall indemnify, defend, and hold harmless the other party in respect of any damages, costs, and expenses (reasonable attorneys fees included) incurred by the other party arising from or relating to the Unauthorized License.

2.7 Nothing herein shall prevent Photographer from engaging in assignment work for his own accounts nor from Licensing - either directly or indirectly - images which are not identical to or Essentially Similar to Images.

3. WARRANTIES:

3.1 Agency and Photographer each represents and warrants the following:

3.1.1 Each party has the right and authority to enter into this Agreement and to perform all obligations hereunder.

3.1.2 This Agreement is not in conflict with any other agency agreement signed by Agency or Photographer, as applicable.

3.2 In addition to the representation and warranty under paragraph 3.1, Photographer represents and warrants to Agency the following:

3.2.1 Photographer alone holds the copyright to Images and has not assigned such copyright to any third party.

3.2.2 Photographer is the sole and exclusive owner of the Images and has full and unrestricted right to License the Images except for any restrictions disclosed to Agency pursuant to 3.2.4 below.

3.2.3 To the best of Photographer's knowledge, Images do not infringe any copyrights, trademarks, property rights, right of privacy, or publicity and do not defame or violate the rights of any third parties in any manner.

3.2.4 Unless any previous Licenses, sales restrictions, or limitations for the use of Images are indicated in writing to Agency, no Licensing restrictions exist and to the best of Photographer's knowledge, there are no claims by any person or entity of such Licensing, restrictions or limitations.

3.3 In the event of any breaches of the above representations and warranties, the party in breach agrees to indemnify and hold the other party harmless for any and all losses, liabilities, damages, claims, demands, costs obligation, deficiencies and expenses (including interest, penalties, and reasonable attorney's fees) which arise, result from or relate to any breach of the above representations and warranties except as provided otherwise in this Agreement.

4. AGENCY OBLIGATION:

4.1 Agency shall use its best commercial efforts to License Images through MP&A and to maximize the consideration for the Licensing.

4.2 Agency shall conduct its business in a professional and ethical manner so as to maintain and promote the reputation of Photographer and his Images.

4.3 Agency shall use a reasonable commercial effort to provide Photographer with samples of all Images Licensed through MP&A. Agency and Photographer understand and agree there are difficulties in obtaining samples when Agency does not handle Licensing directly.

5. PHOTOGRAPHER'S OBLIGATION:

5.1 Photographer agrees to supply Agency with properly mounted and captioned Images and to provide copies of Model Releases or Property Releases on all appropriate Images when available. In the event the existence of a model or property release is not indicated for a given Image, Agency acknowledges that no such release shall be deemed to exist and Agency assumes full responsibility for the subsequent use of such Images and indemnifies the Photographer from any and all damages incurred by MP&A or third parties in connection with such uses.

5.2 Photographer agrees to immediately advise Agency in writing of the terms of any Licensing restrictions applying to any Image in order that MP&A and Photographer may avoid the grant of conflicting Licenses.

5.3 Photographer agrees that, among the Photographer's agencies, Agency will be given first right of refusal on all new images produced by Photographer during the term of this Agreement and that Agency may keep for its files any Images considered to be Essentially Similar to those selected for its purposes.

5.4 Photographer agrees to provide Agency a list of all other agents, agencies or selling mediums with which Photographer has in the past or at present made arrangements to License images.

5.5 It is agreed that the mailing address Photographer furnishes to Agency is of primary importance. Photographer therefore agrees to furnish Agency with a current address to which all payments, sales reports, Images and other materials may be sent.

## 6. COPYRIGHT:

6.1 All Images Licensed by MP&A shall contain a copyright notice in Photographer's name as such notice has been indicated by Photographer on the face of the Images. In the event no notice is so affixed, Agency agrees to affix notice in Photographer's name before the Licensing of any Image.

6.2 All Images shall at all times remain the sole and exclusive property of the Photographer, including the copyright, which shall be held by MP&A solely for Licensing purposes described herein. Photographer grants Agency the right to register such Images for copyright protection in Photographer's name and for the benefit of Photographer. The costs of copyright registration shall be shared equally between Agency and Photographer.

## 7. COMMISSION:

7.1 Photographer's commission on Licensing of Images by MP&A shall be fifty percent (50%) of the gross billings except with respect to packages, for which the commission shall be sixty percent (60%) of the gross billings. For the purposes of this Agreement, a package shall be defined as a series of Images by Photographer which is marketed and sold to a magazine or other periodical as a set that shares a common theme or story line, provided that a set of Images shall not be considered a package unless more than 5 Images are published in a single issue. Gross billings shall be defined as all revenue collected by Agency from the Licensing of Images. Permissible deductions from gross billings shall include currency conversion costs, bank fees, collection fees and sales, use or foreign taxes. Gross billings shall not include service fees, holding fees and research fees.

7.2 With respect to revenues received from the Licensing of New Media products and programming developed by MP&A, twenty-five percent (25%) of such revenues shall be deemed to represent royalties for image content incorporated therein, of which one half (12.5%) shall be paid to Photographer. Photographer's share of New Media royalties shall be determined either by the pro rata portion of a New Media product devoted to Photographer's Images or the pro rata use of a New Media product attributable to Photographer's Images.

7.3 Agency agrees to a monthly payment schedule for reproduction fees collected for the use of Images. Commission checks shall be accompanied by a sales report that includes the following information: date of payment; description of usage; subject of image; identification number of image; gross amount received by Agency; deductions, if any, and amount paid to Photographer. Commission reports and payment for all licensing revenue collected in a given month shall be due and payable on the 20th day of the following month. Notwithstanding the foregoing, it is stated herein that partial payments or any payments received with insufficient information to allow the accurate allocation of revenues between photographic sources shall not be deemed "collected" by Agency until any such payment is made in full or until receipt of information allowing Agency to make an accurate allocation of commissions to photographers.

7.4 After the termination of this Agreement, or, in the case of Images included in MP&A Promotions, after the termination of the Promotion Period, MP&A shall, for a period of one year, have the right to issue Licenses to Images which are in the possession of MP&A customers at the time of termination and which are under consideration for possible use. MP&A shall receive its regular commission, as defined herein, for all Licensing completed under this provision.

 006662

7.5 After the termination of this Agreement, or, in the case of Images incorporated in Promotions, after the termination of the Promotion Period, MP&A shall have the right, for five years to relicense, extend, renew, and/or modify any and all Licenses to any Images Licensed during the term of this Agreement, subject only to Photographer's confirmation that no conflict will arise with another license as a consequence. MP&A shall receive its regular commission, as defined herein, on any and all revenues from the relicense, renewal, extension and/or modification of Licenses to Images Licensed during the term of this Agreement.

8. DUPLICATES:

8.1 Photographer agrees that MP&A may make Duplicates as required to distribute Images.

8.2 Photographer agrees that Duplicates may differ somewhat from Images in such attributes as color, density, sharpness, or crop and that Agency shall bear no liability for any such differences.

8.3 MP&A shall have the unrestricted right and sole discretion to make Duplicates of any Images. Photographer shall not be charged for the cost of making any Duplicate transparencies except as otherwise provided under this Agreement. Copyright ownership to any such Duplicates shall remain with the Photographer but the ownership of the Duplicates themselves shall remain with Agency. MP&A will not make any use of the Duplicates contrary to the terms of this Agreement and if Photographer so requests, MP&A will destroy the Duplicates after it has no further right to exploit them pursuant to this Agreement. Upon termination of this Agreement, Photographer may purchase Duplicates at Agency's cost which shall be stipulated as follows: a) 35mm duplicates: $1.00 b) 70mm duplicates: $3.00 c) 4x5 duplicates: $20.00 and 8x10 duplicates: $50.00.

9. AGENCY USE OF IMAGES FOR PROMOTION:

9.1 Subject to the terms and conditions of this Agreement, MP&A shall have the right and sole discretion to reproduce and use any Images for Promotions in any and all media without compensation to Photographer. After the termination of this Agreement, MP&A shall continue to have the right to use existing promotional material without charge for an additional period of one year from the date of termination

9.2 Agency may select Images for MP&A catalog, website and CD/DVD Promotions and may retrieve from Photographer up to fifty percent (50%) of the pro rata costs of such Promotions. For the purposes of this Agreement, costs of Promotions shall include but not be limited to all relevant costs and expenses of design, prepress, duping, Image scanning, digital cleanup, programming, color separation, production consulting, printing, paper, binding, packaging, transport, distribution and advertising. Agency and Photographer agree that Photographer's per Image cost sharing for Images included in MP&A websites shall be a one time fixed charge amounting to $10.00 per Image. Agency shall advance all costs incurred in such Promotions, and Photographer's fifty percent (50%) share of these costs will be deducted from sales commissions. Such deductions may not exceed 50% of sales commissions due Photographer in any monthly period.

9.3 Photographer agrees that MP&A may continue to License all Images used in MP&A Promotions during the Promotion Period in accordance with the rights granted to MP&A under this Agreement, regardless of the date of termination of this Agreement.

10. INSPECTION OF AGENCY BOOKS:

Agency agrees that upon reasonable notice and during regular business hours, Photographer shall have the right once a year to inspect Agency books and records at the offices of Agency to make extracts thereof as same relate to revenues and expenses related to Photographer's Images ( an "Audit"). Given Agency's responsibility to keep individual photographer records confidential, any such Audit may only be conducted by a licensed, third party CPA and any findings to be communicated to Photographer shall first be submitted to Agency for review. If the result is the discovery that Agency has underpaid Photographer by an

amount equal to or in excess of ten percent (10%) of Photographer's gross annual revenue from Agency in the prior calendar year, then Agency shall bear all costs and expenses of such an audit as well as remit to the Photographer all past due sums.

## 11. STORAGE, CUSTODY, RETRIEVAL AND RETURN OF IMAGES:

11.1  Photographer agrees that Images shall remain with Agency for the duration of this Agreement and that if subsequently recalled, one year from the date of the return request shall be deemed a reasonable time for their reassembly and return. Notwithstanding the foregoing, Agency shall make a reasonable effort to return to Photographer all Images which are not in circulation to clients or sub-agents within 120 days of contract termination. With respect to Images in Promotions for which the Promotion Period continues past termination of this Agreement, Agency shall make a reasonable effort to reassemble and destroy or return to Photographer all Images within 120 days, but no later than one year, following termination of the Promotion Period.

11.2  Photographer understands and agrees that Agency may at its discretion decide to return certain Images to Photographer. Agency is authorized to make such returns at its expense to Photographer via personal delivery, UPS or certified mail.

## 12. CLAIMS, RECOVERIES AND LIABILITY:

12.1  Photographer agrees to indemnify, defend, and hold MP&A harmless from any claims, lawsuits, attorney's fees or other expenses resulting from any erroneous, inaccurate or incomplete information he supplies regarding ownership, caption information, or Licensing restrictions for Images.

12.2  Photographer understands that Images may be lost, damaged, faded or discolored through normal use. Accordingly, Photographer agrees that if at the time of termination of this Agreement, a reasonably full return of Images cannot be made because of the foregoing, then Agency shall have no liability therefore.  Agency's liability with regard to the return of Photographer's Images shall be limited to $100 even in the event of negligence.

## 13. INSURANCE:

Photographer agrees that image library collections are not insurable and that he should therefore seek insurance of his own should he wish to have Images afforded better protection than that offered by Agency.

## 14. INSTITUTION OF ACTIONS:

In the event of non-payment, loss, damage, destruction or unauthorized use of Images by Agency's clients, subagents or other, Photographer gives Agency full and complete authority to make or institute suit in Photographer's name, if necessary, without Photographer's permission.  All resulting recovery shall be apportioned fifty percent (50%) to Photographer and fifty percent (50%) to Agency after deduction for collection fees, legal fees, subagent commissions and other expenses incurred by Agency in its efforts to resolve said claim.  Photographer agrees to give reasonable cooperation with respect to such lawsuits, including without limitation, production of pertinent documents, responding to interrogatories, and appearances at deposition and trial provided Photographer's expenses are reimbursed by Agency. Photographer agrees that whereas the foregoing grants Agency the complete authority to institute suit, Agency is not obligated to do so.

## 15. TERM AND TERMINATION:

15.1  This Agreement shall be in effect for five (5) years from the commencement date hereof, and shall be automatically renewed for a like period unless either party notifies the other party in writing of its

intention not to renew this Agreement no later than thirty (30) days before the date of renewal. The commencement date of this Agreement shall be the date signed by Agency and Photographer and if signed on different dates, the later of the two dates shall be the commencement date.

15.2 Upon expiration or termination of this Agreement, MP&A shall immediately cease all activities in respect to Licensing of any Image except as otherwise provided in this Agreement.

## 16. EVENT OF BANKRUPTCY:

All Images shall remain Photographer's property and cannot be construed as assets of MP&A in the event of bankruptcy.

## 17. ARBITRATION:

Agency and Photographer agree that any and all claims and disputes arising under this Agreement shall be resolved by binding arbitration under the auspices of the American Arbitration Association in San Francisco, California. Any award may be confirmed in any court having jurisdiction.

## 18. MISCELLANEOUS:

18.1 Except as otherwise provided herein, this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, personal representatives, successors and assigns of the parties hereto.

18.2 In the event either party is required to retain an attorney to enforce the terms of this Agreement, the prevailing party's attorney fees shall be paid by the other party.

18.3 Should any provision of this Agreement be found to be non-binding, all remaining provisions shall remain in force for the duration of this Agreement.

18.4 This Agreement may not be terminated during its term except for material breach of its provisions.

18.5 It is agreed that this Agreement does not constitute an employment agreement between Agency and Photographer and that the status of both parties is solely that of independent contractor.

18.6 No trade, custom, or usage shall affect this Agreement or the terms and conditions of it.

18.7 Any notice to be given hereunder shall be in writing and either delivered personally or sent by registered mail, return receipt requested, or by any courier requiring acknowledgement of receipt to the respective addresses set forth for Agency and Photographer herein. Either party may change said address by giving notice to that effect pursuant to the terms of this paragraph.

18.8 This Agreement is to be interpreted solely according to the laws of the State of California.

18.9 This Agreement represents the entire agreement between Agency and Photographer, and supersedes all prior negotiations, representations, or agreements, whether written or oral. This Agreement may be amended only by written agreement signed by both parties.

18.10 Photographer understands and accepts that Agency's terms and conditions pertaining to Image submissions and use as outlined on Agency's delivery memos, invoices and other such paper work, apply only to the terms of business between Agency and it's clients and not between Agency and Photographer.

18.11 The terms of this Agreement shall remain confidential between Agency and Photographer.

Agreed to and Accepted:

_Richard J Minden_

Richard L. Minden
President, Minden Pictures, Inc.
a California Corporation
558 Main Street
Watsonville, CA, 95076

Date: _April 23 2004_

_〔signature〕_

Photographer:
address: _HIROYA MINAKUCHI_

_4-4-13-105, AZAMINO, AOBA-KU,_
_YOKOHAMA, JAPAN 225-0011_

Date: _APR. 15, 2004_

This First Amendment ("First Amendment") to the PHOTOGRAPHER'S AGENCY AGREEMENT FOR THE LICENSING OF STOCK PHOTOGRAPHS dated as of April 23, 2004, ("Agreement") dated as of August 8, 2006, by and between Hiroya Minakuchi ("Photographer"), and Minden Pictures, Inc. ("MP").

The parties wish to modify the Agreement as set forth in detail in this First Amendment. In consideration of the promises, representations and mutual covenants described below, the parties agree as follows:

This First Amendment shall modify the specific provisions set forth below. Except as amended herein, the Agreement shall remain in full force and effect according to its terms. In case of a conflict between a provision of this First Amendment and a provision of the Agreement, the provision of this First Amendment shall control.

1.      Territory:

Paragraph 1.8 defining the territory in which MP is authorized to license Photographer's Images shall be amended to "World Wide with the exception of Japan".

2.      Limitations to Image Licensing by MP:

Paragraphs 2.4 & 2.5 limiting MP Image Licensing shall be amended as follows:

2.4 All Licensing of Images by MP&A shall be at MP&A's sole discretion without prior consultation with the Photographer, except as provided in Paragraph 2.5

2.5 Only Image Licensing by MP&A involving the grant of rights as follows shall require prior written permission by Photographer:

     2.5.1      the grant of total exclusive rights
     2.5.2      the purchase or buyout of all rights

3.      Term:

Paragraph 15 shall be amended such that the Agreement shall continue in force, without interruption, from the date originally signed until the later of: the date of termination stipulated in the original Agreement or three (3) years after the date of this First Amendment.

IN WITNESS WHEREOF, the parties have executed this First Amendment as of the day and year first set forth above.

Photographer.                                           MINDEN PICTURES, INC.

By:      Hiroya Minakuchi                              By: Richard L. Minden, President

Dated:   16/08/2006                                    Dated:  9/6/06

Hiroya Minakuchi
4-4-13-105, Azamino,
Aoba-ku, Yokohama,
Japan. 225-0011
tel/fax: 80-45-904-5884
e-mail; px7h-mnkc@asahi-net.or.jp

Dear Mr. Larry Minden;

I believe everything is going quite well with you.

I have just come back from filming from Alaska.

Thank you so much for your kind e-mail regarding with Getty Images.

Here I enclose the contract amendment signed.

By the way, I would be most happy if you kindly arrange my White Spern whale images withhold from Getty.

270022
270060
270098
270023
270021

Anyway, thank you so much for everything.

I look forward to hearing from you again.

Very truly yours

This Second Amendment ("Second Amendment") dated as of August 8, 2009 to the PHOTOGRAPHER'S AGENCY AGREEMENT FOR THE LICENSING OF STOCK PHOTOGRAPHS dated as of April 23, 2004, ("Agreement"), by and between Hiroya Minakuchi ("Photographer"), and Minden Pictures, Inc. ("MP").

The parties wish to modify the Agreement as set forth in detail in this Second Amendment. In consideration of the promises, representations and mutual covenants described below, the parties agree as follows:

This Second Amendment shall modify the specific provisions set forth below. Except as amended herein, the Agreement shall remain in full force and effect according to its terms. In case of a conflict between a provision of this Second Amendment and a provision of the Agreement, or a provision of the First Amendment, the provision of this Second Amendment shall control.

Term: Paragraph 15 shall be amended such that the Agreement shall continue in force, without interruption, from the date originally signed until three (3) years after the date of this Second Amendment.

IN WITNESS WHEREOF, the parties have executed this Second Amendment as of the day and year first set forth above.

Photographer.                                        MINDEN PICTURES, INC.

By: Hiroya Minakuchi                                 By: Richard L. Minden, President


Dated: Aug. 24. 2009                                 Dated: Sept 1 2009

Copyright Assignment, Accrued Causes of Action, and Litigation Agreement

The undersigned, the sole owner of the copyrights in the undersigned's images ("the Images") selected by Minden Pictures, Inc. ("Agency") and included in its collection, hereby assigns to Agency co-ownership of all copyrights in the Images. This assignment authorizes Agency, in its sole discretion, to present, litigate and settle any accrued or later accruing claims, causes of action, choses in action – which is the personal right to bring a case – or lawsuits, brought by Agency to address unauthorized uses of the Images by licensees of Agency, as if Agency were the undersigned. Agency agrees to reassign its co-ownership of the Images back to the undersigned immediately upon the conclusion of any such litigation.

Any proceeds obtained by settlement or judgment for said claims shall, after deducting all costs, expenses and attorney's fees, be divided as provided in the Photographer's Agency Agreement.

The Undersigned:

Signature

HIROYA MINAKUCHI
Print Name

Date signed: Feb 12. 2010

Minden Pictures, Inc.:

Richard L. Minden, President

Date signed: March 10, 2010

PHOTOGRAPHER'S AGENCY AGREEMENT FOR THE LICENSING OF
STOCK PHOTOGRAPHS ("Agreement")

This Agreement is between Ingo Arndt, hereinafter referred to as "Photographer" and Minden Pictures, Inc., hereinafter referred to as "Agency".

1. DEFINITIONS:

1.1 "Image" or "Images", means all photographic matter including but not limited to original transparencies, photographs, duplicates, negatives, prints, positives or compilations of any of the foregoing items, including without limitation, any form of data or digitized or recorded information derived of any of the foregoing which are previously, now and hereinafter submitted to and accepted by the Agency pursuant to the terms and conditions of this Agreement.

1.2 "License" or "Licensing" means the marketing, grant, lease, sale, use or other exploitation of reproduction rights to an Image or any derivative rights thereof.

1.3 An image is "Essentially Similar" to another Image if they may reasonably cause a person viewing each of them to believe that they are the same or substantially the same Images.

1.4 "MP&A" means Minden Pictures, Inc. and its subsidiaries, affiliates, parent companies and authorized agents and sub-agents.

1.5 "Duplicate" or "Duplicates" mean duplicates, facsimiles, digital scans, or other reproductions of Images, whether created by the Photographer or MP&A.

1.6 "Promotion" or "Promotions" means the display, broadcast, publication, reproduction or use of Images in catalogs, brochures, CD Roms, DVDs or on-line Licensing and/or web sites, in any and all mediums, now known or later developed, throughout the world, for purposes of advertisement, promotion, solicitation or Licensing of Images.

1.7 "Promotion Period" means the 5 year period beginning with the date of publication/creation of an MP&A Promotion or from the date of inclusion of Image(s) in an MP&A on-line site for purposes of advertisement, promotion, solicitation or Licensing of Images.

1.8 "Territory" means world wide without exception.

1.9 "New Media" means electronic products or programming including but not limited to interactive learning modules, interactive television programming, interactive or streaming media, digital slide shows, on-line content, web broadcasting, CD-ROMs and DVDs or other electronic media now in existence or hereafter invented.

2. AUTHORIZATION:

2.1 Photographer, appoints MP&A as sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images in the Territory. Photographer agrees not to place Images, or those which are Essentially Similar, with any agent, agency, or selling medium except Agency. Photographer and/or his representatives shall not issue any Licenses to any Images, nor those which are Essentially Similar, except as provided under this Agreement. Notwithstanding anything herein to the contrary, Photographer and Agency agree that some Images already represented by other agencies may be considered for representation. Photographer agrees to identify all such Images as "Non-exclusive" and not offer any such Images to other agencies if accepted by Agency.

006671

2.2 Photographer grants MP&A the right with respect to Images to create derivative New Media products and programming.

2.3 Photographer grants Agency the right to appoint and contract with sub-agents regarding Licensing of Images in the Territory. Agency shall also have the unrestricted, exclusive right to distribute, License and/ or exploit the Images in the Territory through MP&A without seeking special permission to do so from Photographer except as otherwise provided in this Agreement. Photographer agrees that all Images are available for unrestricted, exclusive, distribution, promotion and Licensing in the Territory by MP&A except as otherwise provided in this Agreement. Photographer will insure that no other parties will License reproduction rights to any images which are identical to or Essentially Similar to any Images.

2.4 All negotiations concerning Licensing of Images by MP&A shall be at MP&A's sole discretion without prior consultation with the Photographer, except as provided under this Agreement.

2.5 Notwithstanding the foregoing, Photographer and MP&A agree that:

2.5.1 All Image Licensing by MP&A which involve the grant of rights as follows shall require prior written permission by Photographer:

2.5.1.1 the grant of rights in perpetuity
2.5.1.2 the grant of total exclusive rights
2.5.1.3 the purchase or buyout of all rights

2.5.2 Photographer may use Images for personal promotion and personal book projects provided any such use does not conflict with Licenses granted by MP&A.

2.5.3 Photographer may license Images as picture stories provided he agrees to advise Agency at the time of submission whether the Images have been or will be published as Picture Stories, and if so, in which territories the Images will be published.

2.5.3 MP&A Licensing of Images in books of which greater than 50% of the total are by Photographer requires prior written permission by Photographer.

2.6 In the event either Photographer or MP&A grants a license that is contrary to the terms of this Agreement (an "Unauthorized License"), the party that grants such Unauthorized License shall pay to the other party an amount (the "Unauthorized License Fee") equal to the gross amount received in respect of such Unauthorized License. As between the parties hereto, the liability (for money damages) of the party that grants an Unauthorized License shall be limited to an amount equal to the Unauthorized License Fee. Notwithstanding the foregoing, the party that grants an Unauthorized License shall indemnify, defend, and hold harmless the other party in respect of any damages, costs, and expenses (reasonable attorneys fees included) incurred by the other party arising from or relating to the Unauthorized License.

2.7 Nothing herein shall prevent Photographer from engaging in assignment work for his own accounts nor from Licensing - either directly or indirectly - images which are not identical to or Essentially Similar to Images.

3. WARRANTIES:

3.1 Agency and Photographer each represents and warrants the following:

3.1.1 Each party has the right and authority to enter into this Agreement and to perform all obligations hereunder.

3.1.2 This Agreement is not in conflict with any other agency agreement signed by Agency or Photographer, as applicable.

006672

3.2  In addition to the representation and warranty under paragraph 3.1, Photographer represents and warrants to Agency the following:

3.2.1  Photographer alone holds the copyright to Images and has not assigned such copyright to any third party.

3.2.2  Photographer is the sole and exclusive owner of the Images and has full and unrestricted right to License the Images except for any restrictions disclosed to Agency pursuant to 3.2.4 below.

3.2.3  To the best of Photographer's knowledge, Images do not infringe any copyrights, trademarks, property rights, right of privacy, or publicity and do not defame or violate the rights of any third parties in any manner.

3.2.4  Unless any previous Licenses, sales restrictions, or limitations for the use of Images are indicated in writing to Agency, no Licensing restrictions exist and to the best of Photographer's knowledge, there are no claims by any person or entity of such Licensing, restrictions or limitations.

3.3  In the event of any breaches of the above representations and warranties, the party in breach agrees to indemnify and hold the other party harmless for any and all losses, liabilities, damages, claims, demands, costs obligation, deficiencies and expenses (including interest, penalties, and reasonable attorney's fees) which arise, result from or relate to any breach of the above representations and warranties except as provided otherwise in this Agreement.

4.  AGENCY OBLIGATION:

4.1  Agency shall use its best commercial efforts to License Images through MP&A and to maximize the consideration for the Licensing.

4.2  Agency shall conduct its business in a professional and ethical manner so as to maintain and promote the reputation of Photographer and his Images.

4.3  Agency shall use a reasonable commercial effort to provide Photographer with samples of all Images Licensed through MP&A.  Agency and Photographer understand and agree there are difficulties in obtaining samples when Agency does not handle Licensing directly.

5.  PHOTOGRAPHER'S OBLIGATION:

5.1  Photographer agrees to supply Agency with properly mounted and captioned Images and to provide copies of  Model Releases or Property Releases on all appropriate Images when available.  In the event the existence of a model or property release is not indicated for a given Image, Agency acknowledges that no such release shall be deemed to exist and Agency assumes full responsibility for the subsequent use of such Images and indemnifies the Photographer from any and all damages incurred by MP&A or third parties in connection with such uses.

5.2  Photographer agrees to immediately advise Agency in writing of the terms of any Licensing restrictions applying to any Image in order that MP&A and Photographer may avoid the grant of conflicting Licenses.

5.3  Photographer agrees that, among the Photographer's agencies, Agency will be given first right of refusal on all new images produced by Photographer during the term of this Agreement and that Agency may keep for its files any Images considered to be Essentially Similar to those selected for its purposes.

5.4  Photographer agrees to provide Agency a list of all other agents, agencies or selling mediums with which Photographer has in the past or at present made arrangements to License images.

5.5  It is agreed that the mailing address Photographer furnishes to Agency is of primary importance. Photographer therefore agrees to furnish Agency with a current address to which all payments, sales reports, Images and other materials may be sent.

6.  COPYRIGHT:

6.1  All Images Licensed by MP&A shall contain a copyright notice in Photographer's name as such notice has been indicated by Photographer on the face of the Images.  In the event no notice is so affixed, Agency agrees to affix notice in Photographer's name before the Licensing of any Image.

6.2  All Images shall at all times remain the sole and exclusive property of the Photographer, including the copyright, which shall be held by MP&A solely for Licensing purposes described herein. Photographer grants Agency the right to register such Images for copyright protection in Photographer's name and for the benefit of Photographer. The costs of copyright registration shall be shared equally between Agency and Photographer.

7.  COMMISSION:

7.1  Photographer's commission on Licensing of Images by MP&A shall be fifty percent (50%) of the gross billings except with respect to packages, for which the commission shall be sixty percent (60%) of the gross billings. For the purposes of this Agreement, a package shall be defined as a series of Images by Photographer which is marketed and sold to a magazine or other periodical as a set that shares a common theme or story line, provided that a set of Images shall not be considered a package unless more than 5 Images are published in a single issue. Gross billings shall be defined as all revenue collected by Agency from the Licensing of Images.  Permissible deductions from gross billings shall include currency conversion costs, bank fees, collection fees and sales, use or foreign taxes.  Gross billings shall not include service fees, holding fees and research fees.

7.2  With respect to revenues received from the Licensing of New Media products and programming developed by MP&A, twenty-five percent (25%) of such revenues shall be deemed to represent royalties for image content incorporated therein, of which one half (12.5%) shall be paid to Photographer. Photographer's share of New Media royalties shall be determined either by the pro rata portion of a New Media product devoted to Photographer's Images or the pro rata use of a New Media product attributable to Photographer's Images.

7.3  Agency agrees to a monthly payment schedule for reproduction fees collected for the use of Images.  Commission checks shall be accompanied by a sales report that includes the following information: date of payment; description of usage; subject of image; identification number of image; gross amount received by Agency; deductions, if any, and amount paid to Photographer. Commission reports and payment for all licensing revenue collected in a given month shall be due and payable on the 20th day of the following month.  Notwithstanding the foregoing, it is stated herein that partial payments or any payments received with insufficient information to allow the accurate allocation of revenues between photographic sources shall not be deemed "collected" by Agency until any such payment is made in full or until receipt of information allowing Agency to make an accurate allocation of commissions to photographers.

7.4  After the termination of this Agreement, or, in the case of Images included in MP&A Promotions, after the termination of the Promotion Period, MP&A shall, for a period of one year, have the right to issue Licenses to Images which are in the possession of MP&A customers at the time of termination and which are under consideration for possible use. MP&A shall receive its regular commission, as defined herein, for all Licensing completed under this provision.

7.5  After the termination of this Agreement, or, in the case of Images incorporated in Promotions, after the termination of the Promotion Period,  MP&A shall have the right, for five years to relicense, extend, renew, and/or modify any and all Licenses to any Images Licensed during the term of this Agreement, subject only to Photographer's confirmation that no conflict will arise with another license as a consequence.

MP&A shall receive its regular commission, as defined herein, on any and all revenues from the relicense, renewal, extension and/or modification of Licenses to Images Licensed during the term of this Agreement.

8.    DUPLICATES:

8.1  Photographer agrees that MP&A may make Duplicates as required to distribute Images.

8.2  Photographer agrees that Duplicates may differ somewhat from Images in such attributes as color, density, sharpness, or crop and that Agency shall bear no liability for any such differences.

8.3  MP&A shall have the unrestricted right and sole discretion to make Duplicates of any Images. Photographer shall not be charged for the cost of making any Duplicate transparencies except as otherwise provided under this Agreement. Copyright ownership to any such Duplicates shall remain with the Photographer but the ownership of the Duplicates themselves shall remain with Agency. MP&A will not make any use of the Duplicates contrary to the terms of this Agreement and if Photographer so requests, MP&A will destroy the Duplicates after it has no further right to exploit them pursuant to this Agreement. Upon termination of this Agreement, Photographer may purchase Duplicate transparencies at Agency's cost which shall be stipulated as follows: a) 35mm duplicates: $1.00 b) 70mm duplicates: $3.00 c) 4x5 duplicates: $20.00 and 8x10 duplicates: $50.00.

9.    AGENCY USE OF IMAGES FOR PROMOTION:

9.1  Subject to the terms and conditions of this Agreement, MP&A shall have the right and sole discretion to reproduce and use any Images for the Promotion of MP&A in any and all media without compensation to Photographer.

9.2  Agency may select Images for MP&A catalog, web site and CD/DVD Promotions and may retrieve from Photographer up to fifty percent (50%) of the pro rata costs of such Promotions. For the purposes of this Agreement, costs of Promotions shall include but not be limited to all relevant costs and expenses of design, prepress, duping, Image scanning, digital cleanup, programming, color separation, production consulting, printing, paper, binding, packaging, transport, distribution and advertising.  Agency shall advance all costs incurred in such Promotions, and Photographer's fifty percent (50%) share of these costs will be deducted from sales commissions. Such deductions may not exceed 50% of sales commissions due Photographer in any monthly period. Agency and Photographer agree that Photographer's per Image cost sharing for Images included in any MP&A websites shall be a one time fixed charge amounting to $10.00 per Image. Photographer and Agent agree in principle that Photographer will participate in promotional cost sharing for Images requiring scanning by Agency but not for Images provided as tiffs from digital capture which are provided in acceptable quality. Photographer and Agency will at the time of receipt of initial submissions of film Images agree and set forth in a contract addendum any limits to promotional cost sharing Photographer is willing to undertake.

9.3    Photographer agrees that MP&A may continue to License all Images used in MP&A Promotions during the Promotion Period in accordance with the rights granted to MP&A under this Agreement, regardless of the date of termination of this Agreement.

10.  INSPECTION OF AGENCY BOOKS:

Agency agrees that upon reasonable notice and during regular business hours, Photographer shall have the right once a year to inspect Agency books and records at the offices of Agency to make extracts thereof as same relate to revenues and expenses related to Photographer's Images ( an "Audit").  Given Agency's responsibility to keep individual photographer records confidential, any such Audit may only be conducted by a licensed, third party CPA and any findings to be communicated to Photographer shall first be submitted to Agency for review.  If the result is the discovery that Agency has underpaid Photographer by an amount equal to or in excess of ten percent (10%) of Photographer's gross annual revenue from Agency in the prior calendar year, then Agency shall bear all costs and expenses of such an audit as well as remit to the Photographer all past due sums.

11. STORAGE, CUSTODY, RETRIEVAL AND RETURN OF IMAGES:

11.1  Photographer agrees that Images shall remain with Agency for the duration of this Agreement and that if subsequently recalled, one year from the date of the return request shall be deemed a reasonable time for their reassembly and return.  Notwithstanding the foregoing, Agency shall make a reasonable effort to return to Photographer all Images which are not in circulation to clients or sub-agents within 120 days of contract termination. With respect to Images in Promotions for which the Promotion Period continues past termination of this Agreement, Agency shall make a reasonable effort to reassemble and destroy or return to Photographer all Images within 120 days, but no later than one year, following termination of the Promotion Period.

11.2  Photographer understands and agrees that Agency may at its discretion decide to return certain Images to Photographer. Agency is authorized to make such returns at its expense to Photographer via personal delivery, UPS or certified mail.

12. CLAIMS, RECOVERIES AND LIABILITY:

12.1  Photographer agrees to indemnify, defend, and hold MP&A harmless from any claims, lawsuits, attorney's fees or other expenses resulting from any erroneous, inaccurate or incomplete information he supplies regarding ownership, caption information, or Licensing restrictions for Images.

12.2  Photographer understands that Images may be lost, damaged, faded or discolored through normal use.  Accordingly, Photographer agrees that if at the time of termination of this Agreement, a reasonably full return of Images cannot be made because of the foregoing, then Agency shall have no liability therefore.  Agency's liability with regard to the return of Photographer's Images shall be limited to $100 even in the event of negligence.

13. INSURANCE:

Photographer agrees that image library collections are not insurable and that he should therefore seek insurance of his own should he wish to have Images afforded better protection than that offered by Agency.

14. INSTITUTION OF ACTIONS:

In the event of non-payment, loss, damage, destruction or unauthorized use of Images by Agency's clients, subagents or other, Photographer gives Agency full and complete authority to make or institute suit in Photographer's name, if necessary, without Photographer's permission.  All resulting recovery shall be apportioned fifty percent (50%) to Photographer and fifty percent (50%) to Agency after deduction for collection fees, legal fees, subagent commissions and other expenses incurred by Agency in its efforts to resolve said claim.  Photographer agrees to give reasonable cooperation with respect to such lawsuits, including without limitation, production of pertinent documents, responding to interrogatories, and appearances at deposition and trial provided Photographer's expenses are reimbursed by Agency.  Photographer agrees that whereas the foregoing grants Agency the complete authority to institute suit, Agency is not obligated to do so.

15. TERM AND TERMINATION:

15.1  This Agreement shall be in effect for five (5) years from the commencement date hereof, and shall be automatically renewed for a like period unless either party notifies the other party in writing of its intention not to renew this Agreement no later than thirty (30) days before the date of renewal. The commencement date of this Agreement shall be the date signed by Agency and Photographer and if signed on different dates, the later of the two dates shall be the commencement date.

15.2 Upon expiration or termination of this Agreement, MP&A shall immediately cease all activities in respect to Licensing of any Image except as otherwise provided in this Agreement.

16. EVENT OF BANKRUPTCY:

All Images shall remain Photographer's property and cannot be construed as assets of MP&A in the event of bankruptcy.

17. ARBITRATION:

Agency and Photographer agree that any and all claims and disputes arising under this Agreement shall be resolved by binding arbitration under the auspices of the American Arbitration Association in San Francisco, California. Any award may be confirmed in any court having jurisdiction.

18. MISCELLANEOUS:

18.1 Except as otherwise provided herein, this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, personal representatives, successors and assigns of the parties hereto.

18.2 In the event either party is required to retain an attorney to enforce the terms of this Agreement, the prevailing party's attorney fees shall be paid by the other party.

18.3 Should any provision of this Agreement be found to be non-binding, all remaining provisions shall remain in force for the duration of this Agreement.

18.4 This Agreement may not be terminated during its term except for material breach of its provisions.

18.5 It is agreed that this Agreement does not constitute an employment agreement between Agency and Photographer and that the status of both parties is solely that of independent contractor.

18.6 No trade, custom, or usage shall affect this Agreement or the terms and conditions of it.

18.7 Any notice to be given hereunder shall be in writing and either delivered personally or sent by registered mail, return receipt requested, or by any courier requiring acknowledgement of receipt to the respective addresses set forth for Agency and Photographer herein. Either party may change said address by giving notice to that effect pursuant to the terms of this paragraph.

18.8 This Agreement is to be interpreted solely according to the laws of the State of California.

18.9 This Agreement represents the entire agreement between Agency and Photographer, and supersedes all prior negotiations, representations, or agreements, whether written or oral. This Agreement may be amended only by written agreement signed by both parties.

18.10 Photographer understands and accepts that Agency's terms and conditions pertaining to Image submissions and use as outlined on Agency's delivery memos, invoices and other such paper work, apply only to the terms of business between Agency and it's clients and not between Agency and Photographer.

18.11 The terms of this Agreement shall remain confidential between Agency and Photographer.

Agreed to and Accepted:

Richard L. Minden
President, Minden Pictures, Inc.
a California Corporation
558 Main Street
Watsonville, CA 95076

Date: 30 Sept 2005

Photographer: Ingo Arndt
Mittelgasse 15
64546 Moerfelden
Germany

Date: 07. September 2005

Bank Details:

Account No 903 66 41
at Kreissparkasse Gross-Gerau Bank, BLZ 508 525 53
64546 Moerfelden, Germany

BIC: HELADEF1GRG
IBAN: DE0250 852 553 000 903 6641
Ust-IdNr. DE 151 253 167

<u>Copyright Assignment, Accrued Causes of Action, and Litigation Agreement</u>

The undersigned, the sole owner of the copyrights in the undersigned's images ("the Images") selected by Minden Pictures, Inc. ("Agency") and included in its collection, hereby assigns to Agency co-ownership of all copyrights in the Images. This assignment authorizes Agency, in its sole discretion, to present, litigate and settle any accrued or later accruing claims, causes of action, choses in action – which is the personal right to bring a case – or lawsuits, brought by Agency to address unauthorized uses of the Images by licensees of Agency, as if Agency were the undersigned. Agency agrees to reassign its co-ownership of the Images back to the undersigned immediately upon the conclusion of any such litigation.

Any proceeds obtained by settlement or judgment for said claims shall, after deducting all costs, expenses and attorney's fees, be divided as provided in the Photographer's Agency Agreement.

The Undersigned:                                    Minden Pictures, Inc.:

_____                           _____
Signature                                          Richard L. Minden, President

Ingo Arndt
Print Name

Date signed: 13. January 2010              Date signed: March 10 2010

Minden v. Pearson                                      006679

# JH EDITORIAL INTERNATIONAL AGENCY AGREEMENT FOR IMAGE LICENSING (hereinafter **Agreement**)

This **Agreement** is made on the $o\Lambda/\Lambda\int$ 2007, between **J. H. Editorial**, hereinafter referred to as **JH Editorial**, and **Minden Pictures**, hereinafter referred to as **AGENT.**

-----------------------------------------------------------------------------------------------

**PREAMBLE:**

i        **JH EDITORIAL** is in the business of arranging for the licensing of reproduction rights in photographs to clients under the conditions of existing contracts with photographers and agents (hereinafter **CONTRIBUTORS**).

ii        **JH EDITORIAL** produces duplicate transparencies, digital scans and associated metadata of these photographs to enable world wide distribution and licensing by third party affiliates including **AGENT.**

iii        **AGENT** is in the business of licensing reproduction rights for photos to clients world wide, hereinafter known as **THE TERRITORY.**"

**TERMS AND CONDITIONS:**

1. **JH EDITORIAL** hereby confers on **AGENT** the right to license reproduction rights to photographs (henceforth **IMAGES**) in **THE TERRITORY**. **AGENT** agrees to accept the appointment and also agrees to actively distribute and market such photographs and to protect their copyright.

1.a        **JH EDITORIAL** grants **AGENT** the right in its sole discretion to appoint and contract with sub-agents and distributors regarding Licensing of Images in the Territory. **AGENT** shall have the unrestricted right to distribute, License and/ or exploit the Images in the Territory through sub-agents and distributors without seeking special permission to do so from **JH EDITORIAL** except as otherwise provided in this Agreement. **JH EDITORIAL** agrees that all Images are available for unrestricted distribution, promotion and Licensing in the Territory by sub-agents and distributors unless indicating otherwise

at the time of submitting Images to **AGENT**.

1. **JH EDITORIAL** will provide **AGENT** with high resolution digital files and the associated metadata of **IMAGES**. If **IMAGES** are provided to **AGENT** on a hard drive or other similar storage device, **AGENT** agrees to return to **JH EDITORIAL** or, upon request, forward to another recipient, at no cost to **JH EDITORIAL**.

   2.a    **AGENT and JH EDITORIAL** agree that **JH EDITORIAL**'s per Image cost for any Images scanned by **AGENT** for inclusion on an **AGENT** website shall be a one time fixed charge amounting to $10.00 per Image. It shall be understood that aggregate scanning charges may be deducted from **JH EDITORIAL's** commission payment until depleted with the understanding that such deductions may amount to no more than 25% of the payment for any given statement period.

3.    **JH EDITORIAL** warrants that **IMAGES** are provided under agreement with **CONTRIBUTORS** who have granted **JH EDITORIAL** the right to license their photographs in **THE TERRITORY**. **JH EDITORIAL** hereby warrants that no **IMAGES** have model or property releases unless specifically indicated. **AGENT** agrees to hold **JH EDITORIAL** and **CONTRIBUTORS** harmless from all claims, losses, costs, expenses, and legal fees arising from the malicious or defamatory use or other misuse of **IMAGES** arising as a consequence of **AGENT**'s licensing activities.

4.    Negotiations relating to the licensing of **IMAGES** shall be at **AGENT**'s sole discretion, with the following exceptions for which **AGENT** must seek and obtain prior written authorization from **JH EDITORIAL** which shall not be unreasonably withheld. **AGENT** shall forfeit its commission on any sales in which the required authorization is not obtained.

   a- Exclusive rights, "buyouts" or royalty free sales

   b-f    N/A

   g - Use of a **CONTRIBUTOR**'s name or likeness on product packaging, book covers, merchandise, endorsements, or other products or services featuring a **CONTRIBUTOR**'s name or likeness as an integral part of the sale.

   h - INTERNET USE:
       - at greater than 72 dpi.

- encouraging the use, distribution or downloading of **IMAGE** files by parties other than **AGENT'S** existing clients or commercial prospective customers in a context or use other than for **IMAGE** licensing.

i - Sales of photographic quality prints other than for museum, aquarium or other public display or signage.

**5.** All fees obtained by sales of reproduction rights through **AGENT** will be shared 40% : 60% with **JH EDITORIAL**; the 40% share being retained by **AGENT**. With regard to royalty payments received from subagents and distributors, the net sum received shall be shared 40% : 60% , the 40% share retained by **AGENT.** Any taxes or fees which are levied by any governing body may only be deducted from the 60% commission due to **JH EDITORIAL** if **AGENT** provides copies of appropriate government documents summarizing all such appropriations.

**6.** In case of collecting on any judgments, settlements, reimbursements or other legal awards related to **IMAGES,** the resulting compensation is to he shared between **AGENT** and **JH EDITORIAL** in the same percentage as stipulated above in paragraph 5 after deduction of related expenses.

**7.** Collection reports including all sales already paid to **AGENT** shall be issued quarterly and sent to **JH EDITORIAL** within 30 days following the end of the quarter reported. Payment of all reported sales shall be issued together with the report. Collection reports shall include the **JH EDITORIAL** photo number, net amount paid to **AGENT,** and details regarding the manner of use and any restrictions. **AGENT** agrees that any payments received by **JH EDITORIAL** later than 60 days after the due date shall be assessed a 10% delinquency fee.

**8.** **JH EDITORIAL** shall have the right, upon reasonable notice and during **AGENT'S** regular business hours, to inspect **AGENT'S** accounting records as they pertain to **IMAGES.** In the event **JH EDITORIAL** determines that an audit is required, the cost of such audit shall be borne by **JH EDITORIAL,** except in the case where underpayment of **JH EDITORIAL** commissions is proven, in which case the cost of such audit shall be borne by **AGENT. AGENT'S** liability for payment of the costs of any such audit shall be limited to an amount not exceeding the total sum of its underpayment to **JH EDITORIAL.** **AGENT** agrees to cooperate reasonably with the completion of any such audit.

9.      **AGENT** agrees to make a reasonable effort to obtain a **CONTRIBUTOR** and **JH EDITORIAL** photo credit in all editorial uses.

10.     **N/A**

11.     **AGENT** and **JH EDITORIAL** agree that copyrights to the photographs remain the property of **CONTRIBUTORS** and that all dupes, digital files and metadata remain the property of **JH EDITORIAL** and shall be destroyed or returned to **JH EDITORIAL** upon termination or expiration of this **Agreement**. **AGENT** agrees not to use dupes, digital files or metadata of **IMAGES** provided under this or prior agreements with **JH EDITORIAL** in any manner except as provided under this agreement. Under no circumstances may **IMAGES** provided under this **AGREEMENT** be used in connection with a direct representation between **AGENT** and any **JH EDITORIAL CONTRIBUTORS**, whether during, or subsequent to the term of this **AGREEMENT**.

**RIGHTS CONTROL:**

12.     **AGENT** agrees to contact **JH EDITORIAL** for authorization prior to issuing any licenses involving exclusivity. **AGENT** agrees to respond to any requests from **JH EDITORIAL** for information regarding **IMAGE** licensing within 1-2 business days. **JH EDITORIAL** agrees to contact **AGENT** for authorization prior to issuing any licenses involving exclusivity.

13.     **AGENT** agrees to indemnify, defend, and hold **JH EDITORIAL** harmless from any claims, lawsuits, attorney's fees or other expenses resulting from any erroneous, inaccurate or incomplete information **AGENT** supplies regarding licensing restrictions or information relating to image sales.

**TERM AND TERMINATION:**

14.     This **Agreement** shall be for a term of three (3) years from the commencement date, which shall be the latter of the dates this **Agreement** is signed by the two parties (the "**INITIAL TERM**"). Thereafter, the **Agreement** will be automatically extended for additional **RENEWAL TERMs** of one (1) year. Either party may terminate the **Agreement** at any time after the first **RENEWAL TERM** by providing notice of its intent to terminate to the other party. The date the termination shall become effective the earlier of the next anniversary of the commencement date of the **Agreement** or within 6 months of issue of the notice of intent to terminate. During the term of this **Agreement**, **JH EDITORIAL** reserves the right to recall from representation by **AGENT** any

**IMAGES. AGENT** agrees to cease licensing and to remove **IMAGES** from all **AGENT** web sites within 30 days of receipt of notification of re call.

15.     Either party may terminate this **Agreement**, without cause at the end of any term, by giving written notice of such termination to the other party.  Termination shall be effective on the date specified in the notice.  If this **Agreement** is terminated by either party, then the party terminating the **Agreement** shall not be liable to the other for any damages, indemnification, expenditures, loss of profits, or prospective profits of any kind sustained or alleged to have been sustained or arising out of such **Agreement**, both parties hereby irrevocably waiving any such rights granted by the laws of their respective countries or of any other jurisdiction.  Each party recognizes and acknowledges that the other party is entering into this **Agreement** in reliance upon and in consideration of the agreements and covenants contained herein.  The breach of any part of this **Agreement** shall result in the immediate termination of this **Agreement** and all balances shall become immediately due and payable and **AGENT** shall return or destroy all **IMAGES** within thirty (30) days.  Upon termination of the **Agreement, AGENT** shall immediately discontinue the marketing and licensing of **IMAGES.**

16.     Just cause for early termination of this **Agreement** by **JH EDITORIAL** includes but is not limited to: a) **AGENT**'s prolonged or repetitive delays (more than 60 days) in issuance and / or payment of collection reports; b) **AGENT** does not actively protect copyright to **IMAGES** or allows infringement or illegal appropriation; c) **AGENT**'s repetitive breach of the stipulations of the provisions of paragraphs 4, 7 or 12; d) liquidation or bankruptcy of **AGENT**. As a consequence of such reasons, **JH EDITORIAL** shall have the option of terminating the **Agreement** early, by providing the **AGENT** with notification of termination in writing. The **AGENT** will cease immediately to license or offer **IMAGES** for license to its clients. Furthermore, **AGENT** will return or destroy all **IMAGES** immediately, will forfeit the right to license additional **IMAGES** and will pay any amounts owed to **JH EDITORIAL.** Without prior written notice from **JH EDITORIAL**, no rights or benefits from this **Agreement** shall inure to any trustee in bankruptcy, creditors, or receivers. All **IMAGES** remain the property of the **CONTRIBUTORS** and cannot be construed as assets of **AGENT** in the event of bankruptcy.

17.     Following termination of this **Agreement**, sales reports and payments shall continue for all outstanding licenses and for any re-uses. **AGENT** may for a period of one year following contract termination renew any licenses issued under the term of the agreement. This provision shall not apply in the case of early termination of the **Agreement** by **JH EDITORIAL.**

1. This **Agreement** shall be construed in accordance with and under the laws of the State of California, without regard to conflict of laws or principles. Any disputes or controversies of any kind involving or pertaining in any way to the breach of, alleged breach of, or alleged invalidity of, performance of, or any claim of any kind with respect to or in connection with this **Agreement** or the rights or obligations of any of the parties hereto, are to be exclusively subject to determination by arbitration in California by a panel of three arbitrators under the International Arbitration rules then prevailing of the American Arbitration Association. Such panel shall have the right to order specific performance as well as the right to award money damages, including reasonable legal fees, expert's fees and other costs, plus interest to the prevailing side. Any decision or award resulting from such arbitration shall be final and binding, and may be confirmed or enforced by any California Court, whether jurisdiction of the courts in California, whether state or federal, or by any other tribunal having jurisdiction. The parties hereby consent to the jurisdiction of the courts in California, whether state or federal, for the foregoing purposes, and waive any claim that such courts either lack jurisdiction or constitute inconvenient forums.

**19.**     In the event that any of the provisions of this **Agreement** shall be held or determined to be invalid or unenforceable in any particular jurisdiction or under the laws of a particular country, such provision shall be enforceable in all other jurisdictions and countries and the remaining provisions of this **Agreement** shall nevertheless continue to be valid and enforceable as though the invalid or unenforceable parts had not been included herein.

**20.**     Nothing contained in this **Agreement** shall be construed to create a partnership or joint venture between the parties. Neither party has the right to obligate the other without prior written agreement, except as outlined herein.

**21.**     This **Agreement** is binding upon both parties, their heirs, executors, administrators, successors, and assigns. **AGENT** has no right to assign or transfer this **Agreement**, nor to enter into a subagent relationship allowing a third party to license **IMAGES**.

**22.**     The terms set forth in this **Agreement** represent the entire understanding between the parties and supersede all prior understandings, agreements, customs, or representations, between the parties, whether oral or written. No terms or conditions of this **Agreement** may be added, deleted or altered unless made in writing and signed by both parties. **AGENT** and **JH EDITORIAL** have agreed that this **Agreement** and all

related documents be prepared in the English language, unless the laws of a particular country also require a translated **Agreement**.  In any event, the English language text of this **Agreement** shall be the original and shall control in the event of any questions concerning the meaning of its terms.

Signed by **AGENT's** Representative

Name:

Date: 01/15/2007

Signed by **JH/EDITORIAL'** Representative

Name: JOEL HARLOUR

Date: 01/15/2006

## PHOTOGRAPHER'S AGENCY AGREEMENT FOR THE LICENSING OF RIGHTS MANAGED STOCK PHOTOGRAPHS ("Agreement")

This Agreement is between Jim Brandenburg, hereinafter referred to as "Photographer", and Minden Pictures Inc., hereinafter referred to as "Agency".

### 1. DEFINITIONS:

1.1 "Image" or "Images", means all photographic matter including but not limited to original transparencies, photographs, duplicates, negatives, prints, positives or compilations of any of the foregoing items, including without limitation, any form of data or digitized or recorded information derived of any of the foregoing which are previously, now and hereinafter submitted to and accepted by the Agency pursuant to the terms and conditions of this Agreement.

1.2 "License" or "Licensing" means the marketing, grant, lease, sale, use or other exploitation of reproduction rights to an Image or any derivative rights thereof. This Agreement specifically does not provide for Agency to engage in "Royalty Free" licensing of Images.

1.3 An image is "Essentially Similar" to another Image if they may reasonably cause a person viewing each of them to believe that they are the same or substantially the same Images.

1.4 "MP&A" means Minden Pictures, Inc. and its subsidiaries, affiliates, parent companies and authorized agents and sub-agents.

1.5 "Duplicate" or "Duplicates" mean duplicates, facsimiles, digital scans, or other reproductions of Images, whether created by the Photographer or MP&A.

1.6 "Promotion" or "Promotions" means the display, broadcast, publication, reproduction or use of Images in catalogs, brochures, CD Roms, DVDs or on-line Licensing and/or web sites, in any and all mediums, now known or later developed, throughout the world, for purposes of advertisement, promotion, solicitation or Licensing of Images.

1.7 "Promotion Period" means the 5 year period beginning with the date of publication/creation of an MP&A Promotion or from the date of inclusion of Image(s) in an MP&A on-line site for purposes of advertisement, promotion, solicitation or Licensing of Images.

1.8 "Territory" means world wide without exception.

1.9 "New Media" means electronic products or programming including but not limited to interactive learning modules, interactive television programming, interactive or streaming media, digital slide shows, on-line content, web broadcasting, CD-ROMs and DVDs or other electronic media now in existence or hereafter invented.

### 2. AUTHORIZATION:

2.1 Photographer, appoints MP&A as sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images in the Territory. Photographer agrees not to place Images, or those which are Essentially Similar, with any agent, agency, or selling medium except Agency. Photographer and/or his representatives shall not issue any Licenses to any Images, nor those which are Essentially Similar, except as provided under this Agreement.

2.2 Photographer grants MP&A the right with respect to Images to create derivative New Media products and programming.

2.3 Photographer grants Agency the right to appoint and contract with sub-agents regarding Licensing of Images in the Territory. Agency shall have the unrestricted, exclusive right to distribute, License and/ or exploit the Images in the Territory through MP&A without seeking special permission to do so from Photographer except as otherwise provided in this Agreement. Photographer agrees that all Images are available for unrestricted, exclusive, distribution, promotion and Licensing in the Territory by MP&A except as otherwise provided in this Agreement. Photographer will insure that no other parties will License reproduction rights to any images which are identical to or Essentially Similar to any Images.

2.4 All negotiations concerning Licensing of Images by MP&A shall be at MP&A's sole discretion without prior consultation with the Photographer, except as provided under this Agreement.

2.5 Notwithstanding the foregoing, Photographer and MP&A agree that:

    2.5.1          All Image Licensing by MP&A which involve the grant of rights as follows shall require prior written permission by Photographer:

            2.5.1.1      the grant of total exclusive rights

            2.5.1.2      the purchase or buyout of all rights

            2.5.1.3      Retail Posters

            2.5.1.4      Product endorsements and other licenses featuring use of Photographer's name other than as photo credit.

            2.5.1.5      Limited or unlimited edition photographic prints other than for museum display or exhibition.

    2.5.2       It is understood, agreed and accepted by Agency that Photographer Images listed in Appendix I may not be licensed for use as retail cards —

    2.5.3 Photographer may use Images for personal promotion, and other personal projects, ands well as editorial and commercial Llicensing to third parties provided any such use is communicated to and cleared with MP&A by providing all relevant data on a Minden Pictures rights clearance form (attached as Appendix II) to insure any such use does not conflict with Licenses granted by MP&A. It is understood and agreed that use of this form is a necessary protocol to insure all uses and Licenses of Photographer's Images are communicated to and recorded by MP&A.

2.6 In the event either Photographer or MP&A grants a license that is contrary to the terms of this Agreement (an "Unauthorized License"), the party that grants such Unauthorized License shall pay to the other party an amount (the "Unauthorized License Fee") equal to the gross amount received in respect of such Unauthorized License. As between the parties hereto, the liability (for money damages) of the party that grants an Unauthorized License shall be limited to an amount equal to the Unauthorized License Fee. Notwithstanding the foregoing, the party that grants an Unauthorized License shall indemnify, defend, and hold harmless the other party in respect of any damages, costs, and expenses (reasonable attorneys fees included) incurred by the other party arising from or relating to the Unauthorized License.

2.7 Nothing herein shall limit or prevent Photographer from engaging in assignment work for his own accounts nor from Licensing - either directly or indirectly - images which are not identical to or Essentially Similar to Images.

3. WARRANTIES:

    3.1 Agency and Photographer each represents and warrants the following:

3.1.1 Each party has the right and authority to enter into this Agreement and to perform all obligations hereunder.

3.1.2 This Agreement is not in conflict with any other agency agreement signed by Agency or Photographer, as applicable.

3.2 In addition to the representation and warranty under paragraph 3.1, Photographer represents and warrants to Agency the following:

3.2.1 Photographer alone holds the copyright to Images and has not assigned such copyright to any third party.

3.2.2 Photographer is the sole and exclusive owner of the Images and has full and unrestricted right to License the Images except for any restrictions disclosed to Agency pursuant to 3.2.4 below.

3.2.3 To the best of Photographer's knowledge, Images do not infringe any copyrights, trademarks, property rights, right of privacy, or publicity and do not defame or violate the rights of any third parties in any manner.

3.2.4 Unless any previous Licenses, sales restrictions, or limitations for the use of Images are indicated in writing to Agency, no Licensing restrictions exist and to the best of Photographer's knowledge, there are no claims by any person or entity of such Licensing, restrictions or limitations.

3.3 In the event of any breaches of the above representations and warranties, the party in breach agrees to indemnify and hold the other party harmless for any and all losses, liabilities, damages, claims, demands, costs obligation, deficiencies and expenses (including interest, penalties, and reasonable attorney's fees) which arise, result from or relate to any breach of the above representations and warranties except as provided otherwise in this Agreement.

4. AGENCY OBLIGATION:

4.1 Agency shall use its best commercial efforts to License Images through MP&A and to maximize the consideration for the Licensing.

4.2 Agency shall conduct its business in a professional and ethical manner so as to maintain and promote the reputation of Photographer and his Images.

4.3 Agency shall use a reasonable commercial effort to provide Photographer with samples of all Images Licensed through MP&A. Agency and Photographer understand and agree there are difficulties in obtaining samples when Agency does not handle Licensing directly.

5. PHOTOGRAPHER'S OBLIGATION:

5.1 Photographer agrees to supply Agency with properly mounted and captioned Images and to provide copies of Model Releases or Property Releases on all appropriate Images when available. In the event the existence of a model or property release is not indicated for a given Image, Agency acknowledges that no such release shall be deemed to exist and Agency assumes full responsibility for the subsequent use of such Images and indemnifies the Photographer from any and all damages incurred by MP&A or third parties in connection with such uses.

5.2 Photographer agrees to immediately advise Agency in writing of the terms of any Licensing restrictions applying to any Image in order that MP&A and Photographer may avoid the grant of conflicting Licenses.

5.3  Photographer agrees that, among the Photographer's agencies, Agency will be given first right of refusal on all new images produced by Photographer during the term of this Agreement and that Agency may keep for its files any Images considered to be Essentially Similar to those selected for its purposes.

5.4  Photographer agrees to provide Agency a list of all other agents, agencies or selling mediums with which Photographer has in the past or at present made arrangements to License images.

5.5  It is agreed that the mailing address Photographer furnishes to Agency is of primary importance. Photographer therefore agrees to furnish Agency with a current address to which all payments, sales reports, Images and other materials may be sent.

6.  COPYRIGHT:

6.1  All Images Licensed by MP&A shall contain a copyright notice in Photographer's name as such notice has been indicated by Photographer on the face of the Images. In the event no notice is so affixed, Agency agrees to affix notice in Photographer's name before the Licensing of any Image.

6.2  All Images shall at all times remain the sole and exclusive property of the Photographer, including the copyright, which shall be held by MP&A solely for Licensing purposes described herein. Photographer grants Agency the right to register such Images for copyright protection in Photographer's name and for the benefit of Photographer. The costs of copyright registration shall be shared equally between Agency and Photographer.

7.  COMMISSION:

7.1  Photographer's commission on Licensing of Images by MP&A shall be sixtyfifty percent (650%) of the gross billings. Gross billings shall be defined as all revenue collected by Agency from the Licensing of Images.  Permissible deductions from gross billings shall include currency conversion costs, bank fees, collection fees and sales, use or foreign taxes.  Gross billings shall not include service fees, holding fees and research fees.

7.2  With respect to revenues received from the Licensing of New Media products and programming developed by MP&A, twenty-five percent (25%) of such revenues shall be deemed to represent royalties for image content incorporated therein, of which one half (12.5%) shall be paid to Photographer. Photographer's share of New Media royalties shall be determined either by the pro rata portion of a New Media product devoted to Photographer's Images or the pro rata use of a New Media product attributable to Photographer's Images.

7.3  Agency agrees to a quarterly payment schedule for reproduction fees collected for the use of Images.  At any point quarterly payments to Photographer exceed $1000 US, Photographer may request and Agency agrees to initiate a monthly payment schedule. Commission checks shall be accompanied by a sales report that includes the following information: date of payment; description of usage; subject of image; identification number of image; gross amount received by Agency; deductions, if any, and amount paid to Photographer. Commission reports and payment for all licensing revenue collected in a given payment period shall be due and payable on the 20th day of the following month.  Notwithstanding the foregoing, it is stated herein that partial payments or any payments received with insufficient information to allow the accurate allocation of revenues between photographic sources shall not be deemed "collected" by Agency until any such payment is made in full or until receipt of information allowing Agency to make an accurate allocation of commissions to photographers.

7.4  After the termination of this Agreement, or, in the case of Images included in MP&A Promotions, after the termination of the Promotion Period, MP&A shall, for a period of one year, have the right to issue Licenses to Images which are in the possession of MP&A customers at the time of termination and which are under consideration for possible use. MP&A shall receive its regular commission, as defined herein, for all Licensing completed under this provision.

7.5 After the termination of this Agreement, or, in the case of Images incorporated in Promotions, after the termination of the Promotion Period,  MP&A shall have the right, for five years to relicense, extend, renew, and/or modify any and all Licenses to any Images Licensed during the term of this Agreement, subject only to Photographer's confirmation that no conflict will arise with another license as a consequence. MP&A shall receive its regular commission, as defined herein, on any and all revenues from the relicense, renewal, extension and/or modification of Licenses to Images Licensed during the term of this Agreement.

8.    DUPLICATES:

8.1  Photographer agrees that MP&A may make Duplicates as required to distribute Images.

8.2  Photographer agrees that Duplicates may differ somewhat from Images in such attributes as color, density, sharpness, or crop and that Agency shall bear no liability for any such differences.

8.3  MP&A shall have the unrestricted right and sole discretion to make Duplicates of any Images. Photographer shall not be charged for the cost of making any Duplicate transparencies except as otherwise provided under this Agreement. Copyright ownership to any such Duplicates shall remain with the Photographer but the ownership of the Duplicates themselves shall remain with Agency. MP&A will not make any use of the Duplicates contrary to the terms of this Agreement and if Photographer so requests, MP&A will destroy the Duplicates after it has no further right to exploit them pursuant to this Agreement.

9.    AGENCY USE OF IMAGES FOR PROMOTION:

9.1  Subject to the terms and conditions of this Agreement, MP&A shall have the right and sole discretion to reproduce and use any Images for the Promotion of MP&A in any and all media without compensation to Photographer.

9.2  Agency may select Images for MP&A catalog, web site and CD/DVD Promotions ~~and may retrieve from Photographer up to fifty percent (50%) of the pro rata costs of such Promotions. For the purposes of this Agreement, costs of Promotions shall include but not be limited to all relevant costs and expenses of design, prepress, duping, Image scanning, digital cleanup, programming, color separation, production consulting, printing, paper, binding, packaging, transport, distribution and advertising. Agency shall advance all costs incurred in such Promotions, and Photographer's fifty percent (50%) share of these costs will be deducted from sales commissions. Such deductions may not exceed 50% of sales commissions due Photographer in any monthly period. Agency and Photographer agree that Photographer's per Image cost sharing for Images included in any MP&A websites shall be a one time fixed charge amounting to $10.00 per Image. The one time $10.00 web image fee will be waived for digital capture images submitted as digital files of acceptable quality accompanied by metadata including at minimum latin and vernacular names, location, behavior or activity and other relevant information of acceptable quality and in the requested format (full details available in digital submission guidelines).~~ .

9.3  Photographer agrees that MP&A may continue to License all Images used in MP&A Promotions during the Promotion Period in accordance with the rights granted to MP&A under this Agreement, regardless of the date of termination of this Agreement.

10. INSPECTION OF AGENCY BOOKS:

Agency agrees that upon reasonable notice and during regular business hours, Photographer shall have the right once a year to inspect Agency books and records at the offices of Agency to make extracts thereof as same relate to revenues and expenses related to Photographer's Images ( an "Audit"). Given Agency's responsibility to keep individual photographer records confidential, any such Audit may only be conducted by a licensed, third party CPA and any findings to be communicated to Photographer shall first be submitted to Agency for review.  If the result is the discovery that Agency has underpaid Photographer by an amount equal to or in excess of ten percent (10%) of Photographer's gross annual revenue from Agency in the prior calendar year, then Agency shall bear all costs and expenses of such an audit as well as remit to the Photographer all past due sums.

Minden v. Pearson                                                                                                    006691

## 11. STORAGE, CUSTODY, RETRIEVAL AND RETURN OF IMAGES:

11.1 Photographer agrees that Images shall remain with Agency for the duration of this Agreement and that if subsequently recalled, one year from the date of the return request shall be deemed a reasonable time for their reassembly and return. Notwithstanding the foregoing, Agency shall make a reasonable effort to return to Photographer all Images which are not in circulation to clients or sub-agents within 120 days of contract termination. With respect to Images in Promotions for which the Promotion Period continues past termination of this Agreement, Agency shall make a reasonable effort to reassemble and destroy or return to Photographer all Images within 120 days, but no later than one year, following termination of the Promotion Period.

11.2 Photographer understands and agrees that Agency may at its discretion decide to return certain Images to Photographer. Agency is authorized to make such returns at its expense to Photographer via personal delivery, UPS or certified mail.

## 12. CLAIMS, RECOVERIES AND LIABILITY:

12.1 Photographer agrees to indemnify, defend, and hold MP&A harmless from any claims, lawsuits, attorney's fees or other expenses resulting from any erroneous, inaccurate or incomplete information he supplies regarding ownership, caption information, or Licensing restrictions for Images.

12.2 Photographer understands that Images may be lost, damaged, faded or discolored through normal use. Accordingly, Photographer agrees that if at the time of termination of this Agreement, a reasonably full return of Images cannot be made because of the foregoing, then Agency shall have no liability therefore. Agency's liability with regard to the return of Photographer's Images shall be limited to $100 even in the event of negligence.

## 13. INSURANCE:

Photographer agrees that image library collections are not insurable and that he should therefore seek insurance of his own should he wish to have Images afforded better protection than that offered by Agency.

## 14. INSTITUTION OF ACTIONS:

In the event of non-payment, loss, damage, destruction or unauthorized use of Images by Agency's clients, subagents or other, Photographer gives Agency full and complete authority to make or institute suit in Photographer's name, if necessary, without Photographer's permission. All resulting recovery shall be apportioned fifty percent (50%) to Photographer and fifty percent (50%) to Agency after deduction for collection fees, legal fees, subagent commissions and other expenses incurred by Agency in its efforts to resolve said claim. Photographer agrees to give reasonable cooperation with respect to such lawsuits, including without limitation, production of pertinent documents, responding to interrogatories, and appearances at deposition and trial provided Photographer's expenses are reimbursed by Agency. Photographer agrees that whereas the foregoing grants Agency the complete authority to institute suit, Agency is not obligated to do so.

## 15. TERM AND TERMINATION:

15.1 ~~15.1~~ This Agreement shall be in effect for five (5) years from the commencement date hereof, and shall be automatically renewed for a like period unless either party notifies the other party in writing of its intention not to renew this Agreement no later than thirty (30) days before the date of renewal. The commencement date of this Agreement shall be the date signed by Agency and Photographer and if signed on different dates, the later of the two dates shall be the commencement date.

15.1.1 Notwithstanding anything herein to the contrary, Photographer retains the right to terminate this Agreement upon Three (3) months notice in the event Richard L. Minden is no longer the majority share holder and director of Minden Pictures Inc. Moreover, it is herein agreed that Photographer shall be advised within 30 business days if Richard L. Minden's status of majority share holder and director changes. In the event Photographer executes this option for early termination, it is understood that all rights granted to MP&A during the Promotion Period as provided under paragraph 9 shall survive termination.

15.2 Upon expiration or termination of this Agreement, MP&A shall immediately cease all activities in respect to Licensing of any Image except as otherwise provided in this Agreement.

## 16. EVENT OF BANKRUPTCY:

All Images shall remain Photographer's property and cannot be construed as assets of MP&A in the event of bankruptcy.

## 17. ARBITRATION:

Agency and Photographer agree that any and all claims and disputes arising under this Agreement shall be resolved by binding arbitration under the auspices of the American Arbitration Association in San Francisco, California. Any award may be confirmed in any court having jurisdiction.

## 18. MISCELLANEOUS:

18.1 Except as otherwise provided herein, this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, personal representatives, successors and assigns of the parties hereto.

18.2 In the event either party is required to retain an attorney to enforce the terms of this Agreement, the prevailing party's attorney fees shall be paid by the other party.

18.3 Should any provision of this Agreement be found to be non-binding, all remaining provisions shall remain in force for the duration of this Agreement.

18.4 This Agreement may not be terminated during its term except for material breach of its provisions.

18.5 It is agreed that this Agreement does not constitute an employment agreement between Agency and Photographer and that the status of both parties is solely that of independent contractor.

18.6 No trade, custom, or usage shall affect this Agreement or the terms and conditions of it.

18.7 Any notice to be given hereunder shall be in writing and either delivered personally or sent by registered mail, return receipt requested, or by any courier requiring acknowledgement of receipt to the respective addresses set forth for Agency and Photographer herein. Either party may change said address by giving notice to that effect pursuant to the terms of this paragraph.

18.8 This Agreement is to be interpreted solely according to the laws of the State of California.

18.9 This Agreement represents the entire agreement between Agency and Photographer, and supersedes all prior negotiations, representations, or agreements, whether written or oral. This Agreement may be amended only by written agreement signed by both parties.

18.10 Photographer understands and accepts that Agency's terms and conditions pertaining to Image submissions and use as outlined on Agency's delivery memos, invoices and other such paper work,

apply only to the terms of business between Agency and it's clients and not between Agency and Photographer.

18.11 The terms of this Agreement shall remain confidential between Agency and Photographer.

Agreed to and Accepted:

Richard L. Minden
President, Minden Pictures, Inc.
a California Corporation
558 Main Street
Watsonville, CA 95076

Date: 10/28/07

Photographer: Jim Brandenburg

address: 14568 Moose Lake Rd
Ely, MN 55731

Date: 10/23/07

This Second Amendment ("Second Amendment") dated as of August 8, 2009 to the PHOTOGRAPHER'S AGENCY AGREEMENT FOR THE LICENSING OF STOCK PHOTOGRAPHS dated as of December 9, 1999, ("Agreement"), by and between Jim Brandenburg ("Photographer"), and Minden Pictures, Inc. ("MP").

The parties wish to modify the Agreement as set forth in detail in this Second Amendment. In consideration of the promises, representations and mutual covenants described below, the parties agree as follows:

This Second Amendment shall modify the specific provisions set forth below. Except as amended herein, the Agreement shall remain in full force and effect according to its terms. In case of a conflict between a provision of this Second Amendment and a provision of the Agreement, or a provision of the First Amendment, the provision of this Second Amendment shall control.

Term: Paragraph 15 shall be amended such that the Agreement shall continue in force, without interruption, from the date originally signed until three (3) years after the date of this Second Amendment.

IN WITNESS WHEREOF, the parties have executed this Second Amendment as of the day and year first set forth above.

Photographer.

By: Jim Brandenburg

Dated:
8/18/09

MINDEN PICTURES, INC.

By: Richard L. Minden, President

Dated:  Sept  1 2009

Copyright Assignment, Accrued Causes of Action, and Litigation Agreement

The undersigned, the sole owner of the copyrights in the undersigned's images ("the Images") selected by Minden Pictures, Inc. ("Agency") and included in its collection, hereby assigns to Agency co-ownership of all copyrights in the Images. This assignment authorizes Agency, in its sole discretion, to present, litigate and settle any accrued or later accruing claims, causes of action, choses in action – which is the personal right to bring a case – or lawsuits, brought by Agency to address unauthorized uses of the Images by licensees of Agency, as if Agency were the undersigned. Agency agrees to reassign its co-ownership of the Images back to the undersigned immediately upon the conclusion of any such litigation.

Any proceeds obtained by settlement or judgment for said claims shall, after deducting all costs, expenses and attorney's fees, be divided as provided in the Photographer's Agency Agreement.

The Undersigned:

Signature

James E. Brandenburg
Print Name

Date signed:  2/16/10

Minden Pictures, Inc.:

Richard L. Minden, President

Date signed:  March 10, 2010

PHOTOGRAPHER'S AGENCY AGREEMENT FOR THE LICENSING OF
STOCK PHOTOGRAPHS ("Agreement")

This Agreement is between Yva Momatiuk and John Eastcott, hereinafter referred to as "Photographer" and Minden Pictures, Inc., hereinafter referred to as "Agency".

1. DEFINITIONS:

1.1 "Image" or "Images", means all photographic matter including but not limited to original transparencies, photographs, duplicates, negatives, prints, positives or compilations of any of the foregoing items, including without limitation, any form of data or digitized or recorded information derived of any of the foregoing which are previously, now and hereinafter submitted to and accepted by the Agency pursuant to the terms and conditions of this Agreement.

1.2 "License" or "Licensing" means the marketing, grant, lease, sale, use or other exploitation of reproduction rights to an Image or any derivative rights thereof.

1.3 An image is "Essentially Similar" to another Image if they may reasonably cause a person viewing each of them to believe that they are the same or substantially the same Images.

1.4 "MP&A" means Minden Pictures, Inc. and its subsidiaries, affiliates, parent companies and authorized agents and sub-agents.

1.5 "Duplicate" or "Duplicates" mean duplicates, facsimiles, digital scans, or other reproductions of Images, whether created by the Photographer or MP&A.

1.6 "Promotion" or "Promotions" means the display, broadcast, publication, reproduction or use of Images in catalogs, brochures, CD Roms, DVDs or on-line Licensing and/or web sites, in any and all mediums, now known or later developed, throughout the world, for purposes of advertisement, promotion, solicitation or Licensing of Images.

1.7 "Promotion Period" means the 5 year period beginning with the date of publication/creation of a Promotion or from the date of inclusion of Image(s) in an on-line site for purposes of advertisement, promotion, solicitation or Licensing of Images.

1.8 "Territory" means world wide without exception.

1.9 "New Media" means electronic products or programming including but not limited to interactive learning modules, interactive television programming, interactive or streaming media, digital slide shows, on-line content, web broadcasting, CD-ROMs and DVDs or other electronic media now in existence or hereafter invented.

2. AUTHORIZATION:

2.1 Photographer, appoints MP&A as sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images in the Territory. Photographer agrees not to place Images, or those which are Essentially Similar, with any agent, agency, or selling medium except Agency. Photographer and/or his representatives shall not issue any Licenses to any Images, nor those which are Essentially Similar, except as provided under this Agreement. **Notwithstanding the foregoing, in instances wherein Images are submitted to and accepted for representation by Agency on a non-exclusive basis, Photographer shall indicate in the delivery memo and identify on the Image caption specific details regarding territories in which an Image is not available for licensing by MP&A.**

2.2  Photographer grants MP&A the right with respect to Images to create derivative New Media products and programming.

2.3  Photographer grants Agency the right to appoint and contract with sub-agents regarding Licensing of Images in the Territory. Agency shall also have the unrestricted, exclusive right to distribute, License and/ or exploit the Images in the Territory through MP&A without seeking special permission to do so from Photographer except as otherwise provided in this Agreement. Photographer agrees that all Images are available for unrestricted, exclusive, distribution, promotion and Licensing in the Territory by MP&A except as otherwise provided in this Agreement. Photographer will insure that no other parties will License reproduction rights to any images which are identical to or Essentially Similar to any Images **except as provided herein.**

2.4  All negotiations concerning Licensing of Images by MP&A shall be at MP&A's sole discretion without prior consultation with the Photographer, except as provided under this Agreement.

2.5  Notwithstanding the foregoing, Photographer and MP&A agree that:

2.5.1  All Image Licensing by MP&A which involve the grant of rights as follows shall require prior written permission by Photographer:

2.5.1.1   the grant of rights in perpetuity
2.5.1.2   the grant of total exclusive rights
2.5.1.3   the purchase or buyout of all rights

2.5.2  Photographer may use Images **for personal promotion, personal book, magazine portfolio and exhibit projects**, provided any such use does not conflict with Licenses granted by MP&A.

2.5.3  MP&A  Licensing of Images in books of which greater than 50% of the total are by Photographer requires prior written permission by Photographer.

2.6  In the event either Photographer or MP&A grants a license that is contrary to the terms of this Agreement (an "Unauthorized License"), the party that grants such Unauthorized License shall pay to the other party an amount (the "Unauthorized License Fee") equal to the gross amount received in respect of such Unauthorized License. As between the parties hereto, the liability (for money damages) of the party that grants an Unauthorized License shall be limited to an amount equal to the Unauthorized License Fee. Notwithstanding the foregoing, the party that grants an Unauthorized License shall indemnify, defend, and hold harmless the other party in respect of any damages, costs, and expenses (reasonable attorneys fees included) incurred by the other party arising from or relating to the Unauthorized License.

2.7  Nothing herein shall prevent Photographer from engaging in assignment work for his own accounts nor from Licensing - either directly or indirectly - images which are not identical to or Essentially Similar to Images.

3.  WARRANTIES:

3.1  Agency and Photographer each represents and warrants the following:

3.1.1  Each party has the right and authority to enter into this Agreement and to perform all obligations hereunder.

3.1.2  This Agreement is not in conflict with any other agency agreement signed by Agency or Photographer, as applicable.

3.2  In addition to the representation and warranty under paragraph 3.1, Photographer represents and warrants to Agency the following:

3.2.1 Photographer alone holds the copyright to Images and has not assigned such copyright to any third party.

3.2.2 Photographer is the sole and exclusive owner of the Images and has full and unrestricted right to License the Images except for any restrictions disclosed to Agency pursuant to 3.2.4 below.

3.2.3 To the best of Photographer's knowledge, Images do not infringe any copyrights, trademarks, property rights, right of privacy, or publicity and do not defame or violate the rights of any third parties in any manner.

3.2.4 Unless any previous Licenses, sales restrictions, or limitations for the use of Images are indicated in writing to Agency, no Licensing restrictions exist and to the best of Photographer's knowledge, there are no claims by any person or entity of such Licensing, restrictions or limitations.

3.3 In the event of any breaches of the above representations and warranties, the party in breach agrees to indemnify and hold the other party harmless for any and all losses, liabilities, damages, claims, demands, costs obligation, deficiencies and expenses (including interest, penalties, and reasonable attorney's fees) which arise, result from or relate to any breach of the above representations and warranties.

4. AGENCY OBLIGATION:

4.1 Agency shall use its best commercial efforts to License Images through MP&A and to maximize the consideration for the Licensing.

4.2 Agency shall conduct its business in a professional and ethical manner so as to maintain and promote the reputation of Photographer and his Images.

4.3 Agency shall use a reasonable commercial effort to provide Photographer with samples of all Images Licensed through MP&A. Agency and Photographer understand and agree there are difficulties in obtaining samples when Agency does not handle Licensing directly.

5. PHOTOGRAPHER'S OBLIGATION:

5.1 Photographer agrees to supply Agency with properly mounted and captioned Images and to provide copies of Model Releases or Property Releases on all appropriate Images when available. In the event the existence of a model or property release is not indicated for a given Image, Agency acknowledges that no such release shall be deemed to exist and Agency assumes full responsibility for the subsequent use of such Images and indemnifies the Photographer from any and all damages incurred by MP&A or third parties in connection with such uses.

5.2 Photographer agrees to immediately advise Agency in writing of the terms of any Image Licensing restrictions applying to any Images in order that MP&A and Photographer may avoid the grant of conflicting Licenses.

5.3 **Omitted**

5.4 Photographer agrees to provide Agency a list of all other agents, agencies or selling mediums with which Photographer has in the past or at present made arrangements to license images.

5.5 It is agreed that the mailing address Photographer furnishes to Agency is of primary importance. Photographer therefore agrees to furnish Agency with a current address to which all payments, sales reports, Images and other materials may be sent.

6. COPYRIGHT:

6.1  All Images Licensed by MP&A shall contain a copyright notice in Photographer's name as such notice has been indicated by Photographer on the face of the Images.  In the event no notice is so affixed, Agency agrees to affix notice in Photographer's name before the Licensing of any Image.

6.2  All Images shall at all times remain the sole and exclusive property of the Photographer, including the copyright, which shall be held by MP&A solely for Licensing purposes described herein. Photographer grants Agency the right to register such Images for copyright protection in Photographer's name and for the benefit of Photographer. The costs of copyright registration shall be shared equally between Agency and Photographer.

## 7.  COMMISSION:

7.1  Photographer's commission on Licensing of Images by MP&A shall be fifty percent (50%) of the gross billings except with respect to packages, for which the commission shall be sixty percent (60%) of the gross billings. For the purposes of this Agreement, a package shall be defined as a series of Images by Photographer which is marketed and sold to a magazine or other periodical as a set that shares a common theme or story line, provided that a set of Images shall not be considered a package unless more than 5 Images are published in a single issue. Gross billings shall be defined as all revenue collected by Agency from the Licensing of Images.  Permissible deductions from gross billings shall include currency conversion costs, bank fees, collection fees and sales, use or foreign taxes.  Gross billings shall not include service fees, holding fees and research fees.

7.2  With respect to revenues received from the Licensing of New Media products and programming developed by MP&A, twenty-five percent (25%) of such revenues shall be deemed to represent royalties for image content incorporated therein, of which one half (12.5%) shall be paid to Photographer. Photographer's share of New Media royalties shall be determined by the pro rata portion of the New Media product devoted to Photographer's Images.

7.3  Agency agrees to a monthly payment schedule for reproduction fees collected for the use of Images.  Commission checks shall be accompanied by a sales report that includes the following information: date of payment; description of usage; subject of image; identification number of image; gross amount received by Agency; deductions, if any, and amount paid to Photographer.

7.4  After the termination of this Agreement, or, in the case of Images incorporated in Promotions, after the termination of the Promotion Period,  MP&A shall have the right, for five years to relicense, extend, renew, and/or modify any and all Licenses to any Images Licensed during the term of this Agreement, subject only to Photographer's confirmation that no conflict will arise with another license as a consequence. MP&A shall receive its regular commission, as defined herein, on any and all revenues from the relicense, renewal, extension and/or modification of Licenses to Images Licensed during the term of this Agreement.

## 8.  DUPLICATES:

8.1  Photographer agrees that MP&A may make Duplicates as required to distribute Images.

8.2  Photographer agrees that Duplicates may differ somewhat from Images in such attributes as color, density, sharpness, or crop and that Agency shall bear no liability for any such differences.

8.3  MP&A shall have the unrestricted right and sole discretion to make Duplicates of any Images. Photographer shall not be charged for the cost of making any such Duplicates except as otherwise provided under this Agreement. Copyright ownership to any such Duplicates shall remain with the Photographer but the ownership of the Duplicates themselves shall remain with Agency. MP&A will not make any use of the Duplicates contrary to the terms of this Agreement and if Photographer so requests, MP&A will destroy the Duplicates after it has no further right to exploit them pursuant to this Agreement.  Upon termination of this Agreement, Photographer may purchase Duplicates at Agency's cost which shall be stipulated as follows: a) 35mm duplicates: $1.00  b) 70mm duplicates: $3.00  c) 4x5 duplicates: $20.00 and 8x10 duplicates: $50.00.



9. AGENCY USE OF IMAGES FOR PROMOTION:

9.1 Subject to the terms and conditions of this Agreement, MP&A shall have the right and sole discretion to reproduce and use any Images for Promotions in any and all media without compensation to Photographer. After the termination of this Agreement, MP&A shall continue to have the right to use existing promotional material without charge for an additional period of one year from the date of termination

9.2 Agency may select Images for MP&A Promotions and may retrieve from Photographer up to fifty percent (50%) of the pro rata production costs of such Promotions. For the purposes of this Agreement, production costs of Promotions shall include but not be limited to all relevant costs and expenses of design, prepress, duping, Image scanning, digital cleanup, color separation, printing, paper, binding, packaging, transport, distribution, programming, and production consulting. Agency shall advance all costs incurred in such Promotions, and Photographer's fifty percent (50%) share of these costs will be deducted from sales commissions. Such deductions may not exceed 50% of sales commissions due Photographer in any monthly period.

9.3 Photographer agrees that MP&A may continue to License all Images used in MP&A Promotions during the Promotion Period in accordance with the rights granted to MP&A under this Agreement, regardless of the date of termination of this Agreement.

10. INSPECTION OF AGENCY BOOKS:

Agency agrees that upon reasonable notice and during regular business hours, Photographer or his designated representative shall have the right once a year to inspect Agency books and records at the offices of Agency to make extracts thereof as same relate to Photographer's Images. If the result is the discovery that Agency has underpaid Photographer by an amount equal to or in excess of five percent (5%) of Photographer's gross annual revenue from Agency, then Agency shall bear all costs and expenses of such an audit as well as remit to the Photographer all past due sums.

11. STORAGE, CUSTODY, RETRIEVAL AND RETURN OF IMAGES:

11.1 Photographer agrees that Images shall remain with Agency for the duration of this Agreement and that if subsequently recalled, one year from the date of the return request shall be deemed a reasonable time for their reassembly and return. Notwithstanding the foregoing, Agency shall make a reasonable effort to return to Photographer all Images which are not in circulation to clients or sub-agents within 120 days of contract termination. With respect to Images in Promotions for which the Promotion Period continues past termination of this Agreement, Agency shall make a reasonable effort to reassemble and destroy or return to Photographer all Images within 120 days, but no later than one year, following termination of the Promotion Period.

11.2 Agency shall at its expense supply a suitable environment for the long-term storage, care and retrieval of Images, including protection from dust, heat, damp and overexposure to light.

11.3 Photographer understands and agrees that Agency may at its discretion decide to return certain Images to Photographer. Agency is authorized to make such returns at its expense to Photographer via personal delivery, UPS or certified mail.

12. CLAIMS, RECOVERIES AND LIABILITY:

12.1 Photographer agrees to indemnify, defend, and hold MP&A harmless from any claims, lawsuits, attorney's fees or other expenses resulting from any erroneous, inaccurate or incomplete information he supplies regarding ownership, caption information, or Licensing restrictions for Images.

12.2 Photographer understands that Images may be lost, damaged, faded or discolored through normal use. Accordingly, Photographer agrees that if at the time of termination of this Agreement, a reasonably full return of Images cannot be made because of the foregoing, then Agency shall have no

liability therefore. Agency's liability with regard to the return of Photographer's Images shall be limited to $100 even in the event of negligence.

13. INSURANCE:

Photographer agrees that image library collections are not insurable and that he should therefore seek insurance of his own should he wish to have Images afforded better protection than that offered by Agency.

14. INSTITUTION OF ACTIONS:

In the event of non-payment, loss, damage, destruction or unauthorized use of Images by Agency's clients, subagents or other, Photographer gives Agency full and complete authority to make or institute suit in Photographer's name, if necessary, without Photographer's permission. All resulting recovery shall be apportioned fifty percent (50%) to Photographer and fifty percent (50%) to Agency after deduction for collection fees, legal fees, subagent commissions and other expenses incurred by Agency in its efforts to resolve said claim. Photographer agrees to give reasonable cooperation with respect to such lawsuits, including without limitation, production of pertinent documents, responding to interrogatories, and appearances at deposition and trial provided Photographer's expenses are reimbursed by Agency. Photographer agrees that whereas the foregoing grants Agency the complete authority to institute suit, Agency is not obligated to do so.

15. TERM AND TERMINATION:

15.1 This Agreement shall be in effect for five (5) years from the commencement date hereof, and shall be automatically renewed for a like period unless either party notifies the other party in writing of its intention not to renew this Agreement no later than thirty (30) days before the date of renewal. The commencement date of this Agreement shall be the date signed by Agency and Photographer and if signed on different dates, the later of the two dates shall be the commencement date.

15.2 Upon expiration or termination of this Agreement, MP&A shall immediately cease all activities in respect to Licensing of any Image except as otherwise provided in this Agreement.

16. EVENT OF BANKRUPTCY:

All Images shall remain Photographer's property and cannot be construed as assets of MP&A in the event of bankruptcy.

17. ARBITRATION:

Agency and Photographer agree that any and all claims and disputes arising under this Agreement shall be resolved by binding arbitration under the auspices of the American Arbitration Association in San Francisco, California. Any award may be confirmed in any court having jurisdiction.

18. MISCELLANEOUS:

18.1 Except as otherwise provided herein, this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, personal representatives, successors and assigns of the parties hereto.

18.2 In the event either party is required to retain an attorney to enforce the terms of this Agreement, the prevailing party's attorney fees shall be paid by the other party.

18.3 Should any provision of this Agreement be found to be non-binding, all remaining provisions shall remain in force for the duration of this Agreement.

18.4 This Agreement may not be terminated during its term except for material breach of its provisions.

18.5 It is agreed that this Agreement does not constitute an employment agreement between Agency and Photographer and that the status of both parties is solely that of independent contractor.

18.6 No trade, custom, or usage shall affect this Agreement or the terms and conditions of it.

18.7 Any notice to be given hereunder shall be in writing and either delivered personally or sent by registered mail, return receipt requested, to the respective addresses set forth for Agency and Photographer herein. Either party may change said address by giving notice to that effect pursuant to the terms of this paragraph.

18.8 This Agreement is to be interpreted solely according to the laws of the State of California.

18.9 This Agreement represents the entire agreement between Agency and Photographer, and supersedes all prior negotiations, representations, or agreements, whether written or oral. This Agreement may be amended only by written agreement signed by both parties.

18.10 Photographer understands and accepts that Agency's terms and conditions pertaining to Image submissions and use as outlined on Agency's delivery memos, invoices and other such paper work, apply only to the terms of business between Agency and it's clients and not between Agency and Photographer.

18.11 The terms of this Agreement shall remain confidential between Agency and Photographer.


Agreed to and Accepted:


_____
Richard L. Minden
President, Minden Pictures, Inc.
a California Corporation

783 Rio del Mar Blvd. #9-11
Aptos, CA 95003

Date: March 15, 2001


_____
Photographer John EASTCOTT   YVA MOMATIUK

address: 151 Eagles Nest Rd
Hurley, N.Y. 12443

Date: March 12, 2001

This First Amendment ("First Amendment") to the PHOTOGRAPHER'S AGENCY AGREEMENT FOR THE LICENSING OF STOCK PHOTOGRAPHS dated as of March 15, 2001, ("Agreement") dated as of August 8, 2006, by and between Yva Momatiuk & John Eastcott ("Photographer"), and Minden Pictures, Inc. ("MP").

The parties wish to modify the Agreement as set forth in detail in this First Amendment. In consideration of the promises, representations and mutual covenants described below, the parties agree as follows:

This First Amendment shall modify the specific provisions set forth below. Except as amended herein, the Agreement shall remain in full force and effect according to its terms. In case of a conflict between a provision of this First Amendment and a provision of the Agreement, the provision of this First Amendment shall control.

1.   Territory:

Paragraph 1.8 defining the territory in which MP is authorized to license Photographer's Images shall be amended to "World Wide without exception".

2.   Limitations to Image Licensing by MP:

Paragraphs 2.4 & 2.5 limiting MP Image Licensing shall be amended as follows:

2.4 All Licensing of Images by MP&A shall be at MP&A's sole discretion without prior consultation with the Photographer, except as provided in Paragraph 2.5

2.5 Only Image Licensing by MP&A involving the grant of rights as follows shall require prior written permission by Photographer:

    2.5.1         the grant of total exclusive rights
    2.5.2         the purchase or buyout of all rights

3.   Term:

Paragraph 15 shall be amended such that the Agreement shall continue in force, without interruption, from the date originally signed until the later of: the date of termination stipulated in the original Agreement or three (3) years after the date of this First Amendment.

IN WITNESS WHEREOF, the parties have executed this First Amendment as of the day and year first set forth above.

Photographer.

By: Yva Momatiuk & John Eastcott

Dated:

MINDEN PICTURES, INC.

By: Richard L. Minden, President

Dated: Sept 6, 2006

This Second Amendment ("Second Amendment") dated as of August 8, 2009 to the PHOTOGRAPHER'S AGENCY AGREEMENT FOR THE LICENSING OF STOCK PHOTOGRAPHS dated as of March 15, 2001, ("Agreement"), by and between Yva Momatiuk & John Eastcott ("Photographer"), and Minden Pictures, Inc. ("MP").

The parties wish to modify the Agreement as set forth in detail in this Second Amendment. In consideration of the promises, representations and mutual covenants described below, the parties agree as follows:

This Second Amendment shall modify the specific provisions set forth below. Except as amended herein, the Agreement shall remain in full force and effect according to its terms. In case of a conflict between a provision of this Second Amendment and a provision of the Agreement, or a provision of the First Amendment, the provision of this Second Amendment shall control.

Term: Paragraph 15 shall be amended such that the Agreement shall continue in force, without interruption, from the date originally signed until three (3) years after the date of this Second Amendment.

IN WITNESS WHEREOF, the parties have executed this Second Amendment as of the day and year first set forth above.

Photographer:

By: Yva Momatiuk & John Eastcott

Dated: 8.12.2009

MINDEN PICTURES, INC.

By: Richard L. Minden, President

Dated: Sept 1 2009

Copyright Assignment, Accrued Causes of Action, and Litigation Agreement

The undersigned, the sole owner of the copyrights in the undersigned's images ("the Images") selected by Minden Pictures, Inc. ("Agency") and included in its collection, hereby assigns to Agency co-ownership of all copyrights in the Images. This assignment authorizes Agency, in its sole discretion, to present, litigate and settle any accrued or later accruing claims, causes of action, choses in action – which is the personal right to bring a case – or lawsuits, brought by Agency to address unauthorized uses of the Images by licensees of Agency, as if Agency were the undersigned. Agency agrees to reassign its co-ownership of the Images back to the undersigned immediately upon the conclusion of any such litigation.

Any proceeds obtained by settlement or judgment for said claims shall, after deducting all costs, expenses and attorney's fees, be divided as provided in the Photographer's Agency Agreement.

The Undersigned:

Signature
FVA  MOMATIUK
JOHN  EASTCOTT
Print Name

Date signed: Feb. 6, 2010

Minden Pictures, Inc.:

Richard L. Minden, President

Date signed: March 10, 2010

 006706

PHOTOGRAPHER'S AGENCY AGREEMENT FOR THE LICENSING OF
RIGHTS MANAGED STOCK PHOTOGRAPHS ("Agreement")

This Agreement is between Katherine Feng, hereinafter referred to as "Photographer" and Minden Pictures Inc., hereinafter referred to as "Agency".

## 1. DEFINITIONS:

1.1 "Image" or "Images", means all photographic matter including but not limited to original transparencies, photographs, duplicates, negatives, prints, positives or compilations of any of the foregoing items, including without limitation, any form of data or digitized or recorded information derived of any of the foregoing which are previously, now and hereinafter submitted to and accepted by the Agency pursuant to the terms and conditions of this Agreement.

1.2 "License" or "Licensing" means the marketing, grant, lease, sale, use or other exploitation of reproduction rights to an Image or any derivative rights thereof. This Agreement specifically does not provide for Agency to engage in "Royalty Free" licensing of Images.

1.3 An image is "Essentially Similar" to another Image if they may reasonably cause a person viewing each of them to believe that they are the same or substantially the same Images.

1.4 "MP&A" means Minden Pictures, Inc. and its subsidiaries, affiliates, parent companies and authorized agents and sub-agents.

1.5 "Duplicate" or "Duplicates" mean duplicates, facsimiles, digital scans, or other reproductions of Images, whether created by the Photographer or MP&A.

1.6 "Promotion" or "Promotions" means the display, broadcast, publication, reproduction or use of Images in catalogs, brochures, CD Roms, DVDs or on-line Licensing and/or web sites, in any and all mediums, now known or later developed, throughout the world, for purposes of advertisement, promotion, solicitation or Licensing of Images.

1.7 "Promotion Period" means the 5 year period beginning with the date of publication/creation of an MP&A Promotion or from the date of inclusion of Image(s) in an MP&A on-line site for purposes of advertisement, promotion, solicitation or Licensing of Images.

1.8 "Territory" means world wide without exception.

1.9 "New Media" means electronic products or programming including but not limited to interactive learning modules, interactive television programming, interactive or streaming media, digital slide shows, on-line content, web broadcasting, CD-ROMs and DVDs or other electronic media now in existence or hereafter invented.

## 2. AUTHORIZATION:

2.1 Photographer, appoints MP&A as sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images in the Territory with the sole exception of China where MP&A shall serve as non-exclusive agent and representative with respect to Licensing of the Images. Photographer agrees not to place Images, or those which are Essentially Similar, with any agent, agency, or selling medium except Agency. Photographer and/or his representatives shall not issue any Licenses to any Images, nor those which are Essentially Similar, except as provided under this Agreement.



2.2 Photographer grants MP&A the right with respect to Images to create derivative New Media products and programming.

2.3 Photographer grants Agency the right to appoint and contract with sub-agents regarding Licensing of Images in the Territory. Agency shall have the unrestricted, exclusive right to distribute, License and/ or exploit the Images in the Territory through MP&A without seeking special permission to do so from Photographer except as otherwise provided in this Agreement. Photographer agrees that all Images are available for unrestricted, exclusive, distribution, promotion and Licensing in the Territory by MP&A except as otherwise provided in this Agreement. Photographer will insure that no other parties will License reproduction rights to any images which are identical to or Essentially Similar to any Images.

2.4 All negotiations concerning Licensing of Images by MP&A shall be at MP&A's sole discretion without prior consultation with the Photographer, except as provided under this Agreement.

2.5 Notwithstanding the foregoing, Photographer and MP&A agree that:

> 2.5.1  All Image Licensing by MP&A which involve the grant of rights as follows shall require prior written permission by Photographer:

>> 2.5.1.1  the grant of total exclusive rights

>> 2.5.1.2  the purchase or buyout of all rights

>> 2.5.1.3  the sale of fine art prints

2.5.2 Photographer may use Images for personal promotion and other personal projects as well as editorial licensing to third parties provided any such use does not conflict with Licenses granted by MP&A. Photographer retains the

2.6 In the event either Photographer or MP&A grants a license that is contrary to the terms of this Agreement (an "Unauthorized License"), the party that grants such Unauthorized License shall pay to the other party an amount (the "Unauthorized License Fee") equal to the gross amount received in respect of such Unauthorized License. As between the parties hereto, the liability (for money damages) of the party that grants an Unauthorized License shall be limited to an amount equal to the Unauthorized License Fee. Notwithstanding the foregoing, the party that grants an Unauthorized License shall indemnify, defend, and hold harmless the other party in respect of any damages, costs, and expenses (reasonable attorneys fees included) incurred by the other party arising from or relating to the Unauthorized License.

2.7 Nothing herein shall prevent Photographer from engaging in assignment work for his own accounts nor from Licensing - either directly or indirectly - images which are not identical to or Essentially Similar to Images.

3. WARRANTIES:

3.1 Agency and Photographer each represents and warrants the following:

3.1.1 Each party has the right and authority to enter into this Agreement and to perform all obligations hereunder.

3.1.2 This Agreement is not in conflict with any other agency agreement signed by Agency or Photographer, as applicable.

3.2 In addition to the representation and warranty under paragraph 3.1, Photographer represents and warrants to Agency the following:



3.2.1 Photographer alone holds the copyright to Images and has not assigned such copyright to any third party.

3.2.2 Photographer is the sole and exclusive owner of the Images and has full and unrestricted right to License the Images except for any restrictions disclosed to Agency pursuant to 3.2.4 below.

3.2.3 To the best of Photographer's knowledge, Images do not infringe any copyrights, trademarks, property rights, right of privacy, or publicity and do not defame or violate the rights of any third parties in any manner.

3.2.4 Unless any previous Licenses, sales restrictions, or limitations for the use of Images are indicated in writing to Agency, no Licensing restrictions exist and to the best of Photographer's knowledge, there are no claims by any person or entity of such Licensing, restrictions or limitations.

3.3 In the event of any breaches of the above representations and warranties, the party in breach agrees to indemnify and hold the other party harmless for any and all losses, liabilities, damages, claims, demands, costs obligation, deficiencies and expenses (including interest, penalties, and reasonable attorney's fees) which arise, result from or relate to any breach of the above representations and warranties except as provided otherwise in this Agreement.

## 4. AGENCY OBLIGATION:

4.1 Agency shall use its best commercial efforts to License Images through MP&A and to maximize the consideration for the Licensing.

4.2 Agency shall conduct its business in a professional and ethical manner so as to maintain and promote the reputation of Photographer and his Images.

4.3 Agency shall use a reasonable commercial effort to provide Photographer with samples of all Images Licensed through MP&A. Agency and Photographer understand and agree there are difficulties in obtaining samples when Agency does not handle Licensing directly.

## 5. PHOTOGRAPHER'S OBLIGATION:

5.1 Photographer agrees to supply Agency with properly mounted and captioned Images and to provide copies of Model Releases or Property Releases on all appropriate Images when available. In the event the existence of a model or property release is not indicated for a given Image, Agency acknowledges that no such release shall be deemed to exist and Agency assumes full responsibility for the subsequent use of such Images and indemnifies the Photographer from any and all damages incurred by MP&A or third parties in connection with such uses.

5.2 Photographer agrees to immediately advise Agency in writing of the terms of any Licensing restrictions applying to any Image in order that MP&A and Photographer may avoid the grant of conflicting Licenses.

5.3 Photographer agrees that, among the Photographer's agencies, Agency will be given first right of refusal to represent any new images produced by Photographer during the term of this Agreement and that Agency may also select for representation any Images considered to be Essentially Similar to those selected for its purposes.

5.4 Photographer agrees to provide Agency a list of all other agents, agencies or selling mediums with which Photographer has in the past or at present made arrangements to License images.

5.5 It is agreed that the mailing address Photographer furnishes to Agency is of primary importance. Photographer therefore agrees to furnish Agency with a current address to which all payments, sales reports, Images and other materials may be sent.

6. COPYRIGHT:

6.1 All Images Licensed by MP&A shall contain a copyright notice in Photographer's name as such notice has been indicated by Photographer on the face of the Images. In the event no notice is so affixed, Agency agrees to affix notice in Photographer's name before the Licensing of any Image.

6.2 All Images shall at all times remain the sole and exclusive property of the Photographer, including the copyright, which shall be held by MP&A solely for Licensing purposes described herein. Photographer grants Agency the right to register such Images for copyright protection in Photographer's name and for the benefit of Photographer. The costs of copyright registration shall be shared equally between Agency and Photographer.

7. COMMISSION:

7.1 Photographer's commission on Licensing of Images by MP&A shall be fifty percent (50%) of the gross billings. Gross billings shall be defined as all revenue collected by Agency from the Licensing of Images. Permissible deductions from gross billings shall include currency conversion costs, bank fees, collection fees and sales, use or foreign taxes. Gross billings shall not include service fees, holding fees and research fees.

7.2 With respect to revenues received from the Licensing of New Media products and programming developed by MP&A, twenty-five percent (25%) of such revenues shall be deemed to represent royalties for image content incorporated therein, of which one half (12.5%) shall be paid to Photographer. Photographer's share of New Media royalties shall be determined either by the pro rata portion of a New Media product devoted to Photographer's Images or the pro rata use of a New Media product attributable to Photographer's Images.

7.3 Agency agrees to a quarterly payment schedule for reproduction fees collected for the use of Images. At any point quarterly payments to Photographer exceed $1000 US, Photographer may request and Agency agrees to initiate a monthly payment schedule. Commission checks shall be accompanied by a sales report that includes the following information: date of payment; description of usage; subject of image; identification number of image; gross amount received by Agency; deductions, if any, and amount paid to Photographer. Commission reports and payment for all licensing revenue collected in a given payment period shall be due and payable on the 20th day of the following month. Notwithstanding the foregoing, it is stated herein that partial payments or any payments received with insufficient information to allow the accurate allocation of revenues between photographic sources shall not be deemed "collected" by Agency until any such payment is made in full or until receipt of information allowing Agency to make an accurate allocation of commissions to photographers.

7.4 After the termination of this Agreement, or, in the case of Images included in MP&A Promotions, after the termination of the Promotion Period, MP&A shall, for a period of one year, have the right to issue Licenses to Images which are in the possession of MP&A customers at the time of termination and which are under consideration for possible use. MP&A shall receive its regular commission, as defined herein, for all Licensing completed under this provision.

7.5 After the termination of this Agreement, or, in the case of Images incorporated in Promotions, after the termination of the Promotion Period, MP&A shall have the right, for five years to relicense, extend, renew, and/or modify any and all Licenses to any Images Licensed during the term of this Agreement, subject only to Photographer's confirmation that no conflict will arise with another license as a consequence MP&A shall receive its regular commission, as defined herein, on any and all revenues from the relicense, renewal, extension and/or modification of Licenses to Images Licensed during the term of this Agreement.



 006710

8.     DUPLICATES:

8.1  Photographer agrees that MP&A may make Duplicates as required to distribute Images.

8.2  Photographer agrees that Duplicates may differ somewhat from Images in such attributes as color, density, sharpness, or crop and that Agency shall bear no liability for any such differences.

8.3  MP&A shall have the unrestricted right and sole discretion to make Duplicates of any Images. Photographer shall not be charged for the cost of making any Duplicate transparencies except as otherwise provided under this Agreement. Copyright ownership to any such Duplicates shall remain with the Photographer but the ownership of the Duplicates themselves shall remain with Agency. MP&A will not make any use of the Duplicates contrary to the terms of this Agreement and if Photographer so requests, MP&A will destroy the Duplicates after it has no further right to exploit them pursuant to this Agreement.

9.     AGENCY USE OF IMAGES FOR PROMOTION:

9.1  Subject to the terms and conditions of this Agreement, MP&A shall have the right and sole discretion to reproduce and use any Images for the Promotion of MP&A in any and all media without compensation to Photographer.

9.2  Agency may select Images for MP&A catalog, web site and CD/DVD Promotions and may retrieve from Photographer up to fifty percent (50%) of the pro rata costs of such Promotions. For the purposes of this Agreement, costs of Promotions shall include but not be limited to all relevant costs and expenses of design, prepress, duping, Image scanning, digital cleanup, programming, color separation, production consulting, printing, paper, binding, packaging, transport, distribution and advertising.  Agency shall advance all costs incurred in such Promotions, and Photographer's fifty percent (50%) share of these costs will be deducted from sales commissions. Such deductions may not exceed 50% of sales commissions due Photographer in any monthly period. Agency and Photographer agree that Photographer's per Image cost sharing for Images included in any MP&A websites shall be a one time fixed charge amounting to $10.00 per Image. The one time $10.00 web image fee will be waived for digital capture images submitted as digital files of acceptable quality accompanied by metadata including at minimum latin and vernacular names, location, behavior or activity and other relevant information of acceptable quality and in the requested format (full details available in digital submission guidelines).

9.3   Photographer agrees that MP&A may continue to License all Images used in MP&A Promotions during the Promotion Period in accordance with the rights granted to MP&A under this Agreement, regardless of the date of termination of this Agreement.

10.  INSPECTION OF AGENCY BOOKS:

Agency agrees that upon reasonable notice and during regular business hours, Photographer shall have the right once a year to inspect Agency books and records at the offices of Agency to make extracts thereof as same relate to revenues and expenses related to Photographer's Images ( an "Audit").  Given Agency's responsibility to keep individual photographer records confidential, any such Audit may only be conducted by a licensed, third party CPA and any findings to be communicated to Photographer shall first be submitted to Agency for review.  If the result is the discovery that Agency has underpaid Photographer by an amount equal to or in excess of ten percent (10%) of Photographer's gross annual revenue from Agency in the prior calendar year, then Agency shall bear all costs and expenses of such an audit as well as remit to the Photographer all past due sums.

11. STORAGE, CUSTODY, RETRIEVAL AND RETURN OF IMAGES:

11.1  Photographer agrees that Images shall remain with Agency for the duration of this Agreement and that if subsequently recalled, one year from the date of the return request shall be deemed a reasonable time for their reassembly and return. Notwithstanding the foregoing, Agency shall make a reasonable effort to return to Photographer all Images which are not in circulation to clients or sub-agents within 120 days of



contract termination. With respect to Images in Promotions for which the Promotion Period continues past termination of this Agreement, Agency shall make a reasonable effort to reassemble and destroy or return to Photographer all Images within 120 days, but no later than one year, following termination of the Promotion Period.

11.2 Photographer understands and agrees that Agency may at its discretion decide to return certain Images to Photographer. Agency is authorized to make such returns at its expense to Photographer via personal delivery, UPS or certified mail.

## 12. CLAIMS, RECOVERIES AND LIABILITY:

12.1 Photographer agrees to indemnify, defend, and hold MP&A harmless from any claims, lawsuits, attorney's fees or other expenses resulting from any erroneous, inaccurate or incomplete information he supplies regarding ownership, caption information, or Licensing restrictions for Images.

12.2 Photographer understands that Images may be lost, damaged, faded or discolored through normal use. Accordingly, Photographer agrees that if at the time of termination of this Agreement, a reasonably full return of Images cannot be made because of the foregoing, then Agency shall have no liability therefore. Agency's liability with regard to the return of Photographer's Images shall be limited to $100 even in the event of negligence.

## 13. INSURANCE:

Photographer agrees that image library collections are not insurable and that he should therefore seek insurance of his own should he wish to have Images afforded better protection than that offered by Agency.

## 14. INSTITUTION OF ACTIONS:

In the event of non-payment, loss, damage, destruction or unauthorized use of Images by Agency's clients, subagents or other, Photographer gives Agency full and complete authority to make or institute suit in Photographer's name, if necessary, without Photographer's permission. All resulting recovery shall be apportioned fifty percent (50%) to Photographer and fifty percent (50%) to Agency after deduction for collection fees, legal fees, subagent commissions and other expenses incurred by Agency in its efforts to resolve said claim. Photographer agrees to give reasonable cooperation with respect to such lawsuits, including without limitation, production of pertinent documents, responding to interrogatories, and appearances at deposition and trial provided Photographer's expenses are reimbursed by Agency. Photographer agrees that whereas the foregoing grants Agency the complete authority to institute suit, Agency is not obligated to do so.

## 15. TERM AND TERMINATION:

15.1 This Agreement shall be in effect for five (5) years from the commencement date hereof, and shall be automatically renewed for a like period unless either party notifies the other party in writing of its intention not to renew this Agreement no later than thirty (30) days before the date of renewal. The commencement date of this Agreement shall be the date signed by Agency and Photographer and if signed on different dates, the later of the two dates shall be the commencement date.

15.2 Upon expiration or termination of this Agreement, MP&A shall immediately cease all activities in respect to Licensing of any Image except as otherwise provided in this Agreement.

## 16. EVENT OF BANKRUPTCY:

All Images shall remain Photographer's property and cannot be construed as assets of MP&A in the event of bankruptcy.

17. ARBITRATION:

   Agency and Photographer agree that any and all claims and disputes arising under this Agreement shall be resolved by binding arbitration under the auspices of the American Arbitration Association in San Francisco, California. Any award may be confirmed in any court having jurisdiction.

18. MISCELLANEOUS:

   18.1 Except as otherwise provided herein, this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, personal representatives, successors and assigns of the parties hereto.

      18.1.1 In the event of Photographer's death, Photographer's Commissions shall be paid to William W.C. Feng, 515 Webster, San Francisco, CA 94117, telephone 415-626-9063

      18.1.2 In the event of the death of Photographer and William W.C. Feng, Photographer's Commission shall be paid to the International League of Conservation Photographers, 2011 Crystal Drive, Suite 500, Arlington, VA 22202

   18.2 In the event either party is required to retain an attorney to enforce the terms of this Agreement, the prevailing party's attorney fees shall be paid by the other party.

   18.3 Should any provision of this Agreement be found to be non-binding, all remaining provisions shall remain in force for the duration of this Agreement.

   18.4 This Agreement may not be terminated during its term except for material breach of its provisions.

   18.5 It is agreed that this Agreement does not constitute an employment agreement between Agency and Photographer and that the status of both parties is solely that of independent contractor.

   18.6 No trade, custom, or usage shall affect this Agreement or the terms and conditions of it.

   18.7 Any notice to be given hereunder shall be in writing and either delivered personally or sent by registered mail, return receipt requested, or by any courier requiring acknowledgement of receipt to the respective addresses set forth for Agency and Photographer herein. Either party may change said address by giving notice to that effect pursuant to the terms of this paragraph.

   18.8 This Agreement is to be interpreted solely according to the laws of the State of California.

   18.9 This Agreement represents the entire agreement between Agency and Photographer, and supersedes all prior negotiations, representations, or agreements, whether written or oral. This Agreement may be amended only by written agreement signed by both parties.

   18.10 Photographer understands and accepts that Agency's terms and conditions pertaining to Image submissions and use as outlined on Agency's delivery memos, invoices and other such paper work, apply only to the terms of business between Agency and it's clients and not between Agency and Photographer.

   18.11 The terms of this Agreement shall remain confidential between Agency and Photographer.

Agreed to and Accepted:

_Richard L. Mende_ (signature)

Richard L. Minden
President, Minden Pictures, Inc.
a California Corporation
558 Main Street
Watsonville, CA 95076

Date: March 9 2009

_Katherine M Feng_ (signature)

Photographer:

address: P.O. Box 4597

Durango, CO 81302

Date: March 1, 2009

Copyright Assignment, Accrued Causes of Action, and Litigation Agreement

The undersigned, the sole owner of the copyrights in the undersigned's images ("the Images") selected by Minden Pictures, Inc. ("Agency") and included in its collection, hereby assigns to Agency co-ownership of all copyrights in the Images. This assignment authorizes Agency, in its sole discretion, to present, litigate and settle any accrued or later accruing claims, causes of action, choses in action – which is the personal right to bring a case – or lawsuits, brought by Agency to address unauthorized uses of the Images by licensees of Agency, as if Agency were the undersigned. Agency agrees to reassign its co-ownership of the Images back to the undersigned immediately upon the conclusion of any such litigation.

Any proceeds obtained by settlement or judgment for said claims shall, after deducting all costs, expenses and attorney's fees, be divided as provided in the Photographer's Agency Agreement.

The Undersigned:

Signature

Katherine M Feng
Print Name

Date signed: Feb 12, 2010

Minden Pictures, Inc.:

Richard L. Minden, President

Date signed: March 10, 2010