IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINDEN PICTURES, INC., | No. C 11-05385 WHA |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| PEARSON EDUCATION, INC., | |
| Defendant. | |

## INTRODUCTION

In this copyright infringement action involving stock photography, defendant moves for summary judgment. For the reasons explained below, defendant's motion is **GRANTED**.

## STATEMENT

Plaintiff Minden Pictures, Inc., is a stock photography agency that licenses photographs to publishers. Defendant Pearson Education, Inc., is a publisher of educational textbooks. It is undisputed that Pearson purchased licenses from Minden for thousands of photographs for use in Pearson's educational publications. Minden alleges that the licenses it sold to Pearson were limited, and that Pearson exceeded those limitations by printing tens, and in some instances, hundreds of thousands of unauthorized copies of the licensed photographs. Minden further alleges that Pearson has been sued on similar copyright claims by others in at least 15 other federal actions, *i.e.*, that Pearson is a willful, repeat offender.

1.     **COPYRIGHT ASSIGNMENTS AND AGENCY AGREEMENTS**

Pearson's motion for summary judgment challenges Minden's standing to bring this action. Minden does not produce the photographs it licenses. Rather, it acts as an agent for stock photographers in transactions with third-party publishers. Minden contends that it has executed two different sets of agreements that give it standing to sue on behalf of the individual photographers it represents.

*First*, Minden asserts that it is a "co-owner" of the copyrights asserted in this action by virtue of copyright assignment agreements executed with individual photographers prior to filing suit. These copyright assignments all appear to be identical in content and purport to grant Minden "co-ownership" of the copyrights at issue as well as the right to litigate accrued claims for relief.

*Second*, Minden asserts that it has standing on the basis of "agency agreements" executed with individual photographers giving it the right to represent the individual photographers as an exclusive agent in licensing transactions. Minden raises this alternative basis for standing for the first time in its opposition to defendant's summary judgment motion. In support, Minden appends approximately 500 pages of these agency agreements to its summary judgment opposition. Many of these agreements are written in languages other than English and no translations were provided. This order assumes without deciding, as supposed by plaintiff, that the agreements are all substantially similar in content and that the agency agreements appended represent all of the agency agreements related to the many copyrights-in-suit.

A main issue now is whether a series of procedural defaults by plaintiff should bar reliance on these agency agreements. The timeline is as follows.

Minden served its initial Rule 26(a) disclosures on February 9, 2012, more than a year ago. *Neither* the copyright assignments *nor* the agency agreements were listed in Minden's Rule 26(a) disclosures.

Minden also filed its first amended complaint on the same day. During a hearing the following week, Minden requested leave to file a second amended complaint. The Court granted leave but ordered Minden to append to its complaint "every single agreement that matters" (Dkt.

2

1  No. 30, 29:13–15). This admonition resulted from discussions with both sides in which it
2  became clear that the chain of agreements and standing were issues in this action. Minden filed
3  its second amended complaint on March 1, 2012, and appended the copyright assignments to that
4  complaint. Minden did *not*, however, append any agency agreements to that complaint (or to its
5  later-filed third amended complaint).

6  On September 6, 2012, Pearson served document requests on Minden seeking documents
7  pertaining to licensing, assignment, and Minden's right to assert claims (Dkt. No. 68-2 ¶¶ 7–8).
8  Minden did *not* produce the agency agreements in response to those requests. On January 18,
9  2013, Minden represented to the Court that "[w]ith minor exceptions, Minden Pictures produced
10 its pertinent documents on October 9, 2012" (Dkt. No. 62 at 3 n. 14).

11 Five months after the original document requests, however, Minden began producing the
12 agency agreements to Pearson on a piecemeal basis on January 30, 2013 (Dkt. No. 71 ¶ 11). As
13 noted above, Minden appended 500 pages of these agency agreements to the summary judgment
14 opposition it filed on February 5, 2013. Minden did not complete production of these documents
15 until February 12, 2013 — the day Pearson's summary judgment reply was due (*see* Dkt. No. 71
16 ¶ 11). The fact discovery cut-off date is April 30, 2013.

17 An order dated February 14, 2013, requested that Minden "file copies of any and all Rule
18 26(a) disclosures that described the agreements" (Dkt. No. 70). This was requested in
19 connection with the instant motion to help the Court evaluate the alleged procedural defaults.
20 The following day, Minden amended its Rule 26(a) disclosures to list the agency agreements.

21 **2. BACKDATED SIGNATURES**

22 Minden now claims that it acquired standing to assert its claims in this action by virtue of
23 the agency agreements and/or copyright assignments *prior* to filing suit 16 months ago in
24 November 2011. In some instances, however, the agency agreements and copyright assignments
25 were not signed by all of the original copyright owners as of the date of the original complaint.
26 Discovery in this action has revealed a series of emails from February 2012 wherein Richard
27 "Larry" Minden, President of Minden, Inc., requested that two photographers supply additional
28 signatures on an agency agreement, two amendments to that agreement, and a copyright

assignment in order to "help insure against some nit picking judge from finding fault with" the agreements (Dkt. No. 71 ¶ 2; Dkt. No. 64-5 at 1–2). Larry Minden then asked the photographers to backdate their signatures, stating: "as long as we're faking it, why not use dates between the dates you and I signed in each case. That way is [*sic*] rock solid" (Dkt. No. 64-5 at 1).

In a declaration filed with the summary judgment opposition, Larry Minden states (Dkt. No. 67-1 ¶ 7):

> "my reference to "faking it" was a cavalier, off-hand comment made without reflection and with no intent to defraud. While I knew adding signatures and dates to preexisting documents was "faking it" in the sense that the documents would be altered, I was not aware that doing so was illegal if all parties consented, as was the case here.

The backdated agreements correspond to 123 of the more than 4000 copyrights asserted in this action (*see* Dkt. No 71-3). One backdated copyright assignment was filed with the Court on March 1, 2012 — prior to defendants' discovery of Minden's backdating scheme (*compare* Dkt. No. 32-4 at 36 *with* Dkt. No. 71-1 at 11).

This order follows full briefing on the summary judgment motion, supplemental submissions by the parties, oral argument, and consideration of relevant passages in Minden's sur-reply brief.

## ANALYSIS

Summary judgment is proper when the pleadings and the evidence in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). An issue is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Under California law, the interpretation of contract language is a question of law." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–926 (9th Cir. 2003).

### 1. MINDEN IS PRECLUDED FROM RELYING ON THE AGENCY AGREEMENTS.

At several points in this litigation, Minden was required to identify and/or produce the agency agreements. It failed to do so. After consideration of lesser remedies, this order holds that the appropriate remedy is preclusion.

4

1  Minden was first obligated to identify the agency agreements in its initial Rule 26(a)
2  disclosures because any that were genuinely dated were documents in its possession, custody or
3  control that it could foreseeably use to support its claims or defenses. *See* Rule 26(a)(1)(A)(ii).
4  These documents should have been identified prior to October 4, 2012 — the date of the case
5  management scheduling order in this action (Dkt. No. 44). Rule 37(c) provides that failure to
6  disclose will result in the party being precluded from using the information unless the failure was
7  substantially justified or harmless. From the outset of this action, the Court has warned the
8  parties that Rule 37 preclusion might well apply if they failed to disclose documents or
9  information required under Rule 26(a) (*see, e.g.*, Dkt. No. 3 ¶ 26).

10  This order holds that Minden's failure to disclose the agency agreements was not
11  substantially justified. Minden's counsel, attorney Robert Crockett, claims that Minden did not
12  include the agency agreements with its Rule 26(a) disclosures because "at that time [its counsel]
13  did not appreciate their relevance to establish standing and did not intend to rely on them for any
14  other purpose" (Dkt. No. 71 ¶ 4). Mr. Crockett further represented to the Court during oral
15  argument that at the time the Rule 26(a) disclosures were filed he lacked familiarity with the
16  agency agreements.

17  Minden's contention that it did not appreciate the relevance of the agency agreements is
18  not credible. Minden's counsel represent other plaintiffs in at least several of the currently
19  pending copyright actions against Pearson. Prior to filing suit, Minden's counsel specifically
20  advised their client that Pearson had raised substantial challenges to similar agreements in the
21  other actions (Dkt. No. 64-3 at 000189–90). Minden's counsel recognized that the agency
22  agreements might not be sufficient to confer standing to sue — and *on that basis* executed the
23  copyright assignments with the individual photographers (*ibid*.).

24  Nor is it plausible that Minden's counsel somehow forgot about the standing issue
25  between the time Minden filed this suit and the time Minden filed its Rule 26(a) disclosures on
26  February 9, 2012. Twelve days later, Larry Minden sent the following email regarding a
27  copyright assignment to a photographer not involved in the instant suit (Dkt. No. 64-4 at
28  000072):

5

> Upon careful scrutiny of Minden Pictures photographer contracts, our attorneys find that the language in which photographers grant Minden Pictures the right to represent claims involving copyrights may not be strong enough to withstand a rigorous legal challenge should their attorneys adopt tactics they've used elsewhere. For this reason, our attorneys ask that I send the attached amendment to each of you for signature and return as soon as possible so we may continue with as strong a position as possible from the outset.

Mr. Crockett claims that he lacked familiarity with the agency agreements and didn't appreciate their relevance when the Rule 26(a) disclosures were filed. During the same time period, Larry Minden was telling photographers — on the advice of counsel — that the agency agreements might not survive a standing challenge and the photographers should therefore execute copyright assignments.

Attorney Robert Crockett's representations to the Court cannot be accepted. It is clear that Minden made a strategic choice at the outset of this litigation not to disclose the agency agreements and instead to rely solely on the assignment agreements. Minden reaffirmed that choice by failing to timely supplement its Rule 26(a) disclosures and by failing to produce the agency agreements in response to Pearson's document requests. Minden has not shown substantial justification for its very late disclosures. Minden must now accept the consequences of its decision.

Nor can Minden's failure to disclose be deemed harmless. Not only were production and disclosure long overdue, Pearson relied on Minden's assertion of the copyright assignments as the sole basis for standing throughout the motion to dismiss phase, the entire course of discovery, and during the preparation of its motion for summary judgment.

Equally important, when the scope of Minden's right to sue was ventilated at a hearing, the Court ordered Minden to append all relevant agreements to its anticipated second amended complaint (Dkt. No. 30, 29:13–15). By failing to append the agency agreements, Minden violated that order. Moreover, Pearson's September 2012 document requests called for the production of the agency agreements. Minden failed to timely produce the agency agreements in response to that request and then falsely represented to the Court that its productions were substantially complete (*see* Dkt. No. 62 at 3 n.14). Preclusion is an equally appropriate remedy under Rule 37(b) for these violations.

6

An alternative to preclusion would be taxing Minden with fees and costs incurred as a result of its belated attempt to rely on the agency agreements. If Minden's late disclosure were the result of innocent error or excusable neglect, this lesser sanction might be appropriate. Here, however, the procedural history and evidence in the record demonstrate that Minden withheld the agency agreements as a deliberate part of its litigation strategy. Imposing a monetary sanction would mean that Minden could escape the consequences of its calculated choice by simply paying a fee (after extensive satellite litigation over what follow-on work was necessitated by the default). And, any lesser remedy would require a postponement of the fact discovery deadline in order to accommodate the additional discovery Pearson would need to meet the new issues as well as a postponement of the trial schedule. Such gamesmanship should not be encouraged. This order holds that, under the circumstances, a lesser remedy than preclusion would not be appropriate.

As a sanction for Minden's multiple violations of the Court's orders and the discovery rules, the agency agreements shall be deemed **STRICKEN** from the record, and Minden is **PRECLUDED** from relying on them.

This order now turns to Minden's primary basis for standing in this action: the copyright assignments.

**2. THE COPYRIGHT ASSIGNMENTS ONLY CONVEY THE BARE RIGHT TO SUE.**

Minden asserts that the copyright assignments (at least those timely appended to its second amended complaint) provide an independent basis for standing to sue on behalf of the individual photographers. Pearson replies that the copyright assignments are insufficient to confer standing because they simply disguise an assignment of a bare right to sue. This order agrees with Pearson.

The full text of the 'Copyright Assignment, Accrued Causes of Action, and Litigation Agreements' asserted by Minden reads as follows:

> The undersigned, the sole owner of the copyrights in the undersigned's images ("the Images") selected by Minden Pictures, Inc. ("Agency") and included in its collection, hereby assigns to agency co-ownership of all copyrights in the Images. This assignment authorizes Agency, in its sole discretion, to present, litigate and settle any accrued or later accruing claims, causes of

7

> action, choses in action — which is the personal right to bring a case — or lawsuits, brought by Agency to address unauthorized uses of the images by licensees of Agency, as if Agency were the undersigned. Agency agrees to reassign its co-ownership of the Images back to the undersigned immediately upon the conclusion of such litigation.
>
> Any proceeds obtained by settlement or judgment for said claims shall, after deducting all costs, expenses and attorney's fees, be divided as provided in the Photographer's Agency Agreement.

(Dkt. No. 58, Exhs. 2a–2c.)

Under Section 501(b) of the 1976 Copyright Act, only the legal or beneficial owner of one of the six enumerated "exclusive" rights is authorized to sue for infringement of copyright. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005). "The bare assignment of an accrued cause of action is impermissible under [Section] 501(b)." *Id*. at 890. The nature of the rights conveyed by an agreement is governed by the substance of what is given, not the label that the parties put on an agreement — plaintiff's label cannot serve as a method to subvert summary judgment. *See Nafal v. Carter*, 540 F. Supp. 2d 1128, 1141–42 (C.D. Cal. 2007), *aff'd* 388 Fed. App'x 721 (9th Cir. 2010).

The copyright assignments asserted by Minden are exactly the type of disguised assignment of a cause of action prohibited by *Silvers* and *Nafal*. *Nafal* is particularly instructive. The plaintiff in *Nafal* claimed to be a "co-exclusive licensee" of a copyrighted song by virtue of an assignment agreement. The agreement provided that the plaintiff had "an undivided one-half (50%) of [his co-licensee's] rights, title and interest" that the co-licensee held in a separate license agreement. Yet, the fact that the parties described their interests as a form of undivided, 50% co-ownership was not dispositive. The contract language did not provide the plaintiff in *Nafal* with the "independent and equivalent power to exercise his rights" in the license agreement. In particular, the contract language limited the plaintiff's decision-making authority with respect to the license agreement, stripped the plaintiff of his rights if he failed to file a lawsuit, and did not confer any discretion upon plaintiff as to whether to file a lawsuit. *Nafal*, 540 F. Supp. 2d at 1139–43.

Superficially, the instant action presents a closer question than *Nafal* because the copyright assignment injects the term "co-ownership" and provides Minden with discretion

8

whether to sue. When the contract is viewed as a whole, the clear and unambiguous intent of the parties was to assign to Minden the bare right to sue. "Co-ownership" was merely a label intended to disguise the assignment of the cause of action as something else.

The sole function of the copyright assignment is to grant an exclusive license to bring suit and divvy up any returns; there is no right to participate in any royalties apart from the litigation. Beyond the express terms, the parties' intent is also evident from what is missing from the agreement: a term specifying the duration of the license. Instead, the copyright assignment terminates automatically upon conclusion of any litigation with the reassignment of "co-ownership" back to the copyright owners. If the parties genuinely intended to transfer co-ownership, under the terms of the contract Minden would retain that co-ownership in perpetuity if it failed to bring suit. Such a reading would put Minden on coequal footing with the copyright owners. The copyright assignments, however, cannot reasonably be read in this manner. Implicitly, the contracting parties intended for Minden to bring the instant suit and not for it to be a genuine, potentially-permanent owner of any of the exclusive rights under Section 501(b).

Both sides have submitted parol evidence of the intent of the parties to the copyright assignments. Under California law,

> [t]he decision whether to admit parol evidence involves a two-step process. First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract."

*Pac. State Bank v. Greene*, 110 Cal. App. 4th 375, 386 (2003).

Minden states throughout its summary judgment opposition that the copyright assignments resulted in co-ownership, but this merely begs the question. In one instance, however, Minden asserts that the ownership agreements granted it a "legal ownership interest" in the underlying copyrights (Opp. 14). To assess this contention, the declarations submitted by Minden with its summary judgment opposition are provisionally received to determine whether the term "co-ownership" is reasonably susceptible to the interpretation that it refers to a transfer of legal title to Minden.

9

As a preliminary matter, Minden has only supplied declarations from the individuals involved in a scheme to backdate the contracts for 123 of the copyrighted photographs: Larry Minden and two individual photographers. Thus there is no evidence from Minden that specifically pertains to the vast majority of the contract assignments asserted in this action.

Assuming, *arguendo*, that these declarations are representative, each of the three declarations contains suspiciously similar language, to wit: that the individuals intended to make "whatever assignments are necessary to accomplish [the] purpose" of "pursuing this action against Pearson for its infringements of images licensed by Minden Pictures" (Dkt. No. 67-1 ¶ 7), and to assign "whatever rights are necessary to confer standing on Minden Pictures to assert and prosecute copyright infringement claims, including an assignment of co-ownership of the copyrights on the photographs in question" (Dkt. No. 67-17 ¶ 6; Dkt. No. 67-20 ¶ 6).

These statements are clearly doublespeak tainted by the influence of litigation. They do not evince any intent to transfer any *specific* legal (or beneficial) ownership to Minden. Rather, the objective was to create the mere appearance of standing in this lawsuit. They do not render the copyright assignments reasonably susceptible of the interpretation that they transferred legal title in the underlying copyrights to Minden.

The only other relevant parol evidence are emails submitted by Pearson. These emails appear to be between Larry Minden and individual photographers. In them, Larry Minden quotes the full text of the copyright assignments and requests that the photographers sign the agreements. In his explanation of the language of the copyright assignments to the photographers, Larry Minden wrote:

> Upon careful scrutiny of Minden Pictures photographer contracts, our attorneys find that the language in which photographers grant Minden Pictures the right to represent claims involving copyrights may not be strong enough to withstand a rigorous legal challenge should their attorneys adopt tactics they've used elsewhere. For this reason, our attorneys ask that I send the attached amendment to each of you for signature and return as soon as possible so we may continue with as strong a position as possible from the outset.
>
> What this amendment does is assign Minden Pictures coownership of copyrights of images we represent solely for actions or lawsuits brought by Minden Pictures to address unauthorized image use by our clients. *My understanding is this is the sole purpose this assignment of co-ownership may be used for.*

10

Dkt. No. 64-3 at 000189-90; Dkt. No. 64-4 at 000073; Dkt. No. 64-5 at 000106-07) (emphasis added).

Unlike the later declarations submitted by Minden, these communications pre-dated the original complaint and were not subject to the taint of litigation. *They plainly show that the copyright assignments were not intended to be broad grants of co-ownership of legal title*. Rather, the sole purpose and use of the assignment was as a vehicle for bringing suit.

The parol evidence uniformly supports the conclusion that the term "co-ownership" is not reasonably susceptible of an intent to transfer legal title. Accordingly, even if this evidence is received, it is of no avail.

Finally, Minden's argument that Pearson itself lacks standing to challenge the validity of the copyright assignments is easily rejected. Minden relies on decisions referring to the writing requirement in 35 U.S.C. 204(a). These decisions do not apply to standing challenges based on Section 501(b), and they lack persuasive value because they pre-date *Silvers* and *Nafal*.

The copyright assignments asserted by Minden no more than disguised assignments of the bare right to sue. Therefore, this order holds that the copyright assignments do not provide Minden with standing to sue on behalf of the individual photographers. Because there is no other basis for standing, Pearson's motion for summary judgment is **GRANTED**.

### 3. PLAINTIFF'S SUR-REPLY

During oral argument, plaintiff requested leave to submit a 15-page sur-reply brief. Plaintiff's counsel, attorney Robert Crockett, represented that this sur-reply brief responded *solely* to new arguments defendants raised in their summary judgment reply. This representation proved to be untrue. For example, Section V-B of Minden's sur-reply addresses Pearson's contention that the copyright assignments convey only the bare right to sue. Pearson raised this argument in its opening brief (Br. 14).

Only a fraction of the material in plaintiff's sur-reply responds to genuinely new reply arguments. Most of it relates to issues raised by Minden because of its reliance on the agency agreements in its summary judgment opposition. Attorney Robert Crockett's description of the contents of the sur-reply is both disappointing and emblematic of continued lack of candor.

11

The Court will nonetheless receive the sur-reply brief but restrict consideration only to the portions that respond to new-reply issues; to this limited extent, leave to file the sur-reply is **GRANTED**. Upon due consideration, this order finds that nothing in the sur-reply materially affects the conclusions above.

## CONCLUSION

Pearson's motion for summary judgment is **GRANTED**. Because this disposes of the action, this order does not reach Pearson's various alternative arguments. All other pending motions are **DENIED**.

Defendant's request for prevailing party attorney's fees is **DENIED**. The evidence that Larry Minden backdated certain agreements is highly troubling. "In this circuit, courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir.1985). Defendants contend that the Larry Minden's email statements establishing that certain agreements were backdated constitutes willful and fraudulent falsification of documents. If proven true, plaintiff's conduct could result in the dismissal of this action with prejudice, the entry of default judgment in defendants' favor, an award of all fees and costs to defendants, and a referral to the United States Attorney's Office for criminal investigation. *See* 18 U.S.C. 1623(a). Nonetheless, this order does not rely on the evidence of plaintiff's bad acts as a basis for granting summary judgment.

Judgment will be entered for defendant Pearson, Inc. This is a ruling on standing only. It does not bar the photographers themselves from suing Pearson on the same claims.

**IT IS SO ORDERED.**

Dated: March 5, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE